ISMAIL J. RAMSEY (CABN 189820)
United States Attorney
MICHELLE LO (NYRN 4325163)
Chief, Civil Division
MICHAEL A. KEOUGH (NYRN 5199666)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6878
    Fax: (415) 436-7234
    michael.keough@usdoj.gov

*Attorneys for Defendant*
*Merrick B. Garland*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BRAD D. BRINSON, an individual,<br><br>    Plaintiff,<br><br>  v.<br><br>MERRICK B. GARLAND, *et al.*,<br><br>    Defendants. | Case No. 3:22-CV-09076-JSC<br><br>**DEFENDANT MERRICK B. GARLAND'S MOTION TO DISMISS**<br><br>Hrg Date: Thursday, June 8, 2023<br>Time:     10:00 a.m. |

**TABLE OF CONTENTS**

NOTICE OF MOTION ........................................................................................................................ 1

RELIEF SOUGHT .............................................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................... 1

I.  STATEMENT OF ISSUES TO BE DECIDED ..................................................................... 1

II. INTRODUCTION .................................................................................................................. 1

III. FACTUAL AND PROCEDURAL BACKGROUND ............................................................ 2

IV. LEGAL STANDARD ............................................................................................................ 3

V.  ARGUMENT ......................................................................................................................... 4

    A.  The Claim for Erroneous Denial of Firearm (Count I) Should Be Dismissed Because Plaintiff is Ineligible to Lawfully Purchase a Firearm .......................................... 4

    B.  The Statute at Issue Does Not Violate the Second Amendment ........................................ 7

        1.  Plaintiff Is Not a Law-Abiding Citizen Protected By the Second Amendment ............ 7

        2.  Domestic Abusers Have Historically Been Disarmed .................................................. 8

        3.  Every District Court to Consider This Question Post-*Bruen* Has Found Section 922(g)(9) Constitutional, and Post-*Heller* Ninth Circuit Precedent Upholds Section 922(g)(9) .......................................................................................... 12

    C.  Any Section 1983 Claims (Counts II and III) Against a Federal Official Must Be Dismissed ....................................................................................................................... 13

VI. CONCLUSION .................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ........................................................................................................... 3, 4

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ........................................................................................................... 3, 4

*Billings v. United States*,
 57 F.3d 797 (9th Cir. 1995) ................................................................................................... 13

*Buster v. United States*,
 447 F.3d 1130 (8th Cir. 2006) ................................................................................................. 5

*Close v. Sotheby's, Inc.*,
 894 F.3d 1061 (9th Cir. 2018) ............................................................................................... 13

*District of Columbia v. Heller*,
 554 U.S. 570 (2008) ....................................................................................................... passim

*Fisher v. Kealoha*,
 855 F.3d 1067 (9th Cir. 2017) ............................................................................................... 12

*Kanter v. Barr*,
 919 F.3d 437 (7th Cir. 2019) ................................................................................................... 9

*Kendall v. Visa U.S.A., Inc.*,
 518 F.3d 1042 (9th Cir. 2008) ................................................................................................. 3

*McDonald v. Chicago*,
 561 U.S. 742 (2010) ................................................................................................................ 8

*MedImmune, Inc. v. Genentech, Inc.*,
 549 U.S. 118 (2007) ............................................................................................................ 7, 8

*MGIC Indem. Corp. v. Weisman*,
 803 F.2d 500 (9th Cir. 1986) ................................................................................................... 3

*Miller v. Gammie*,
 335 F.3d 889 (9th Cir. 2003) ................................................................................................. 13

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
 142 S. Ct. 2111 (2022) ..................................................................................................... passim

*State v. Davis*,
   5 S.C.L. 3 (S.C. Const. App. 1811) .................................................................................. 11

*United States v. Belless*,
   338 F.3d 1063 (9th Cir. 2003) ........................................................................................... 10

*United States v. Bernard*,
   No. 22-CR-03 CJW-MAR, 2022 WL 17416681 (N.D. Iowa Dec. 5, 2022) ....................... 12

*United States v. Castleman*,
   572 U.S. 157 (2014) ........................................................................................................... 10

*United States v. Chester*,
   628 F.3d 673 (4th Cir. 2010) ............................................................................................... 8

*United States v Chovan*,
   735 F.3d 1127, 1138 (9th Cir. 2013) ............................................................................... 7, 8

*United States v. Coombes*,
   No. 22-CR-00189, 2022 WL 4367056 (N.D. Okla. Sept. 21, 2022) ................................ 8, 9

*United States v. Costigan*,
   No. CRIM. 00-9-B-H, 2000 WL 898455 (D. Me. June 16, 2000), *aff'd* 18 F. App'x 2
   (1st Cir. 2001) ................................................................................................................ 5, 11

*United States v. Farley*,
   No. 22-CR-30022, 2023 WL 1825066 (C.D. Ill. Feb. 8, 2023) ......................................... 12

*United States v. Gleaves*,
   No. 3:22-CR-00014, 2023 WL 1791866 (M.D. Tenn. Feb. 6, 2023) ................................ 12

*United States v. Hammond*,
   No. 4:22-cr-177-SHL-HCA 2023 WL 2319321 (S.D. Iowa Feb. 15, 2023) ..................... 12

*United States v. Hayes*,
   555 U.S. 415 (2009) .................................................................................................. 4, 6, 10

*United States v. Hoeft*,
   No. 4:21-CR-40163-KES 2023 WL 2586030 (D.S.D. Mar. 21, 2023) ............................. 12

*United States v. Jackson*,
   No. CR-22-59-D, 2022 WL 3582504 (W.D. Okla. Aug. 19, 2022) .................................. 12

*United States v. Kays*,
   No. 22 Cr. 40, 2022 WL 3718519 (W.D. Okla. Aug. 29, 2022) ....................................... 12

*United States v. King*,
   No. CR-22-488-J, 2023 U.S. Dist. LEXIS 55714 (W.D. Okla. Mar. 9, 2023) .................. 12

*United States v. Lewitzke*,
  176 F.3d 1022 (7th Cir. 1999) .................................................................................................. 6

*United States v. Martinez*,
  No. 17-CR-00257-VC 2023 WL 1457529 (N.D. Cal. Feb. 2, 2023) ....................................... 12

*United States v. Nutter*,
  No. 2:21-CR-00142, 2022 WL 3718518 (S.D.W. Va. Aug. 29, 2022) ................................... 12

*United States v. Perez-Garcia*,
  No. 22 Cr. 1581, 2022 WL 4351967 (S.D. Cal. Sept. 18, 2022) ............................................ 11

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .................................................................................................... 3

*United States v. Shelton*,
  325 F.3d 553 (5th Cir. 2003) ................................................................................................ 5, 6

*United States v. Skoien*,
  614 F.3d 638 (7th Cir. 2010) .................................................................................................... 9

*United States v. Vongxay*,
  594 F.3d 1111 (9th Cir. 2010) .................................................................................................. 9

*United States v. White*,
  593 F.3d 1199 (11th Cir. 2010) ................................................................................................ 5

*White v. Dep't of Justice*,
  328 F.3d 1361 (Fed. Cir. 2003) ............................................................................................ 5, 6

*Woods v. City & Cnty. of Denver*,
  62 F. App'x 286 (10th Cir. 2003) ............................................................................................. 6

**Statutes**

18 U.S.C. § 922 ............................................................................................................................ passim

18 U.S.C. § 925A .................................................................................................................... 1, 2, 4, 7

28 U.S.C. § 2201 ................................................................................................................................. 7

42 U.S.C. § 1983 ..................................................................................................................... 1, 2, 13

California Penal Code § 242 ............................................................................................................... 5

California Penal Code § 243 ........................................................................................................... 2, 5

Pub. Law 117-159 ............................................................................................................................... 4

**English Cases**

*King v. Lord Lee*
 83 Eng. Rep. 482 (K.B. ca. 1675) .................................................................................... 11

*Sims's Case*,
 93 Eng. Rep. 1131 (1743-44) .......................................................................................... 11

*Lord Leigh's Case*,
84 Eng. Rep. 807 (1674) .................................................................................................. 11

*Manby v. Scott*,
 82 Eng. Rep. 1000 (Ex. 1659) ......................................................................................... 11

**Other Authorities**

Don B. Kates, Jr., *The Second Amend.: A Dialogue*, 49 Law & Contemp. Probs. 143 (Winter 1986) ..... 9

Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*,
 73 Fordham L. Rev. 487 (2004). ....................................................................................... 9

Saul Cornell, *"Don't Know Much About History" the Current Crisis in Second Amendment Scholarship*,
 29 N. Ky. L. Rev. 657 (2002). .......................................................................................... 9

142 Cong. Rec. S10377 (1996) ............................................................................................ 10

Blackstone's Commentaries ................................................................................................. 10

Henry Ansgar Kelly, *Rule of the Thumb and the Folklaw of the Husband's Stick*, 44 J. Legal Ed. 341
    (1994); ............................................................................................................................ 11

Carolyn B. Ramsey, *The Stereotyped Offender: Domestic Violence and the Failure of Intervention*, 120
    Penn. State L. Rev. 337 (2015). ....................................................................................... 11

Massachusetts Body of Liberties § 80 (1641) ...................................................................... 11

Tapping Reeve, *The Law of Baron and Femme; of Parent and Child; of Guardian and Ward; of Master
    and Servant; and of the Powers of Courts of Chancery* (New Haven, Oliver Steele 1816) ................ 11

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on June 8, 2023 at 10:00 a.m., or as soon thereafter as this matter may be heard by the Honorable Jacqueline Scott Corley, United States District Judge of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, Courtroom 8 – 19th Floor, San Francisco, California, Defendant Merrick B. Garland ("Defendant") will and hereby does move the Court for an order dismissing the Complaint of Defendant Brad D. Brinson (Dkt. 1, the "Complaint" or "Compl.") under Rule 12(b)(6).

**RELIEF SOUGHT**

Defendant seeks an order dismissing the claims in the Complaint against Merrick B. Garland in their entirety with prejudice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    STATEMENT OF ISSUES TO BE DECIDED**

1. Whether Plaintiff's claims arising under 18 U.S.C. § 925A must be dismissed because Plaintiff is ineligible to purchase a firearm;

2. Whether 18 U.S.C. § 922(g)(9) violates the Second Amendment to the United States Constitution, as Plaintiff alleges; and

3. Whether any claims arising under 42 U.S.C. § 1983 must be dismissed because such suits are not permitted against federal officials.

**II.    INTRODUCTION**

Plaintiff's Complaint contends that he has been denied his Second Amendment rights because of inaccurate records referencing Plaintiff's 1997 domestic violence conviction maintained by either Defendant Garland or Defendant Rob Bonta. These contentions, however, omit the facts underlying Plaintiff's conviction, which involved a victim with whom evidence demonstrates Plaintiff had previously cohabitated. This renders Plaintiff ineligible to purchase a firearm. The Court should accordingly dismiss the Complaint for several reasons:

*First*, Plaintiff fails to state a claim under 18 U.S.C. § 925A because he is ineligible to purchase a firearm. 18 U.S.C. § 922(g)(9) prevents those convicted of a "misdemeanor crime of domestic violence" from receiving firearms, and Plaintiff's prior cohabitation with the victim qualifies as a

person similarly situated to a spouse" that would bar him from receiving firearms.  Courts applying Section 922(g)(9) to facts similar to those here have uniformly held that Section 922(g)(9) applies to bar a claim under 18 U.S.C. § 925A.

*Second*, the statute at issue does not violate the Second Amendment, even in light of the Supreme Court's recent opinion in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).  Plaintiff, as someone convicted of a domestic violence crime, is not a law-abiding citizen to whom the Second Amendment applies.  Further, Section 922(g)(9) is consistent with "this Nation's historical tradition of firearm regulation," 142 S. Ct. at 2126, as required by *Bruen*.  Every single district court that has addressed the constitutionality of Section 922(g)(9) post-*Bruen* has upheld the constitutionality of the statute.

*Finally*, several of Plaintiff's claims against the federal defendant arise under 42 U.S.C. § 1983.  Because such claims cannot be brought against federal officials acting under color of federal law, these claims must be dismissed.

## III.   FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff Brad Brinson is a resident of San Francisco County.  Compl. ¶ 10.  On August 21, 1997, Plaintiff was convicted of violating California Penal Code § 243(e).  Compl. ¶ 31.  Violations of Section 243(e) include battery "committed against a spouse, a person with whom the defendant is cohabiting, a person who is the parent of the defendant's child, former spouse, fiancé, or fiancée, or a person with whom the defendant currently has, or has previously had, a dating or engagement relationship."  *See* Cal. Penal Code § 243(e).  A former cohabitant is not an enumerated category of relationship under Section 243(e).

The Complaint includes few details regarding the conviction, noting only that "[t]he victim was a woman with whom Plaintiff was involved in a dating relationship."  Compl. ¶ 31.  The Complaint attaches incomplete correspondence between Bruce Colodny, Plaintiff's attorney at the time, and counsel for the Federal Bureau of Investigation (FBI).  Compl. Ex. A.  But that correspondence also included a July 21, 2014 email whereby Colodny provided the FBI with a certified copy of the state

---

[1] The factual allegations below are taken from Plaintiff's Complaint (Dkt. 1).

court case file from the 1997 conviction, *see* Exhibit A to the Declaration of Michael A. Keough, filed concurrently herewith (and provisionally under seal), at 6 to 31, as well as the Santa Cruz County Sheriff's report associated with the incident  *See* Exhibit A at 32 to 41.[2]  The records provided by Plaintiff's attorney indicate that Plaintiff had formally lived with the victim for one year, and had moved out of the home he shared with the victim only a few months prior to the incident that led to Plaintiff's conviction.  *Id.* at 27 & 34.

In 2014, Plaintiff was prevented from purchasing a firearm.  Compl. ¶ 33.  Plaintiff retained counsel to contact the FBI, and counsel for the FBI indicated to Plaintiff's attorney his belief that the 1997 conviction did not prevent Plaintiff from purchasing a firearm.  Compl. ¶ 35.  While Plaintiff was briefly allowed to purchase firearms, in 2018 he was again denied.  Compl. ¶ 40.  The Complaint does not allege the reason for the 2018 denial.  Plaintiff is currently unable to purchase firearms and, according to the Complaint, has dispossessed himself of firearms he had previously acquired.  Compl. ¶¶ 42-43.

## IV.  LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain sufficient factual assertions, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Mere conclusions" need not be accepted as true when deciding whether a claim is facially plausible.  *Id.* at 664; *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1046 (9th Cir. 2008) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

---

[2] Defendant respectfully requests that the Court take judicial notice of Exhibit A to the Declaration of Michael A. Keough, which is comprised of the Bruce Colodny correspondence and Santa Cruz County court records attached thereto.  The Court may take judicial notice of "matters of public record," such as court documents, without converting a motion to dismiss into a motion for summary judgment.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).  Further, because the 1997 conviction and the correspondence between FBI and Bruce Colodny regarding that conviction are referenced "extensively" in the Complaint, the Court may consider this correspondence and attachments as incorporated by reference into the Complaint.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  "The district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  *Id.*

conclusions, and a formulaic recitation of the elements of a cause of action will not do." (quoting *Twombly*, 550 U.S. at 555)). Allegations that are "merely consistent with a defendant's liability," or reflect only "the mere possibility of misconduct" do not "show[] that the pleader is entitled to relief," and thus are insufficient to state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678-79 (citations and internal quotation marks omitted).

## V.  ARGUMENT

### A.  The Claim for Erroneous Denial of Firearm (Count I) Should Be Dismissed Because Plaintiff is Ineligible to Lawfully Purchase a Firearm

Plaintiff's claim for erroneous denial of a firearm (Count I) should be dismissed because Plaintiff is ineligible to lawfully purchase a firearm. 18 U.S.C. § 925A allows "any person denied a firearm . . . who was not prohibited from receipt of a firearm pursuant to subsection (g) or (n) of section 922" to bring an action "for an order directing . . . that the transfer be approved." *See* 18 U.S.C. § 925A. Section 922(g) of Title 18 of the United States Code prohibits the receipt of firearms by several categories of people, including anyone "who has been convicted in any court of a misdemeanor crime of domestic violence." 18 U.S.C. § 922(g)(9). At the time of Plaintiff's 2018 denial, Section 922 defined "misdemeanor crime of domestic violence" as:

> An offense that— (i) is a misdemeanor under Federal, State, Tribal, or local law; and (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

*See* 18 U.S.C. § 921(a)(33)(A)(ii).[3] Accordingly, three elements must be met for Plaintiff's 1997 conviction to disqualify him from receiving a firearm: (1) the crime is a misdemeanor under federal, state, or tribal law, (2) the crime has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, and (3) the crime was committed by someone in a specified relationship with the victim. *Id*; *see also United States v. Hayes*, 555 U.S. 415, 418 (2009) (noting that

---

[3] While Section 921(a)(33)(A)(ii) was amended in 2022 to add "dating relationship[s]" generally to the definition of "misdemeanor crime of domestic violence," this amendment did not apply retroactively. *See* Bipartisan Safer Communities Act, Pub. Law 117-159, June 25, 2022, 136 Stat 1313, at § 12005(b).

MOTION TO DISMISS
3:22-CV-09076-JSC                                                  4

the specific type of relationship does not itself need to be established as an element of the underlying misdemeanor offense). The Complaint does not dispute that California Penal Code § 243(e) is a misdemeanor under state law, or that Section 243(e) has as an element the use or attempted use of physical force. *See* Cal. Penal Code § 242 (defining "battery" as "any willful and unlawful use of force or violence upon the person of another").

The Complaint does, however, dispute that Plaintiff was in one of the specified relationships with the victim, as required by the final element. According to the Complaint, "a dating relationship is insufficient to qualify as a misdemeanor crime of domestic violence" that would bar Plaintiff from receiving a firearm. Compl. ¶ 32. If these were the only facts underlying Plaintiff's conviction, Plaintiff might be correct that, in 2018, a dating relationship alone would not have disqualified him from purchasing a firearm. But Plaintiff's Complaint omits the remainder of the facts from the 1997 offense, most notably that Plaintiff cohabitated with his victim for one year prior to the incident that led to his 1997 conviction. Exhibit A at 27 & 34. This relationship, and not the mere fact of Plaintiff's dating relationship with the victim, prevents him from receiving a firearm because dating cohabitants are considered "person[s] similarly situated to a spouse." *See* 18 U.S.C. § 921(a)(33)(A)(ii).

At least five circuits have addressed this question of whether dating cohabitants are considered "person[s] similarly situated to a spouse" – the First, Fifth, Eighth, Eleventh, and Federal Circuits – and each has held in the affirmative. *See Buster v. United States*, 447 F.3d 1130, 1133 (8th Cir. 2006) ("We agree with the First and Fifth Circuits and hold abuse perpetrated on a live-in girlfriend is domestic abuse committed 'by a person similarly situated to a spouse' for purposes of sections 922(g)(9) and 921(a)(33)(A)(ii)."); *United States v. Costigan*, No. CRIM. 00-9-B-H, 2000 WL 898455, at *3 (D. Me. June 16, 2000), *aff'd* 18 F. App'x 2 (1st Cir. 2001) ("Congress was reaching broadly and was not limiting the prohibition to domestic violence occurring in legal or common law marriages . . . I conclude, therefore, that Congress intended to reach domestic relationships of all sorts–legal, common law or otherwise."); *United States v. Shelton*, 325 F.3d 553, 563 (5th Cir. 2003) ("live-in girlfriend" of two months was similarly situated to a spouse); *United States v. White*, 593 F.3d 1199, 1204 (11th Cir. 2010) ("The victim was in a specified domestic relationship with White: she lived with him, was his girlfriend, and the dispute was a domestic one.") (internal quotations omitted); *White v. Dep't of Justice*,

1  328 F.3d 1361, 1369 (Fed. Cir. 2003) (holding defendant was "a person similarly situated to a spouse"
2  under Section 921(a)(33)(A)(ii) where defendant and victim cohabited as boyfriend and girlfriend
3  continuously for almost a year and intermittently for several months).  In so deciding, these courts
4  looked to cohabitation relationships of a similar length to that of Plaintiff and the victim – or even
5  shorter – and determined that these relationships were covered by the final clause of Section
6  921(a)(33)(A)(ii) as a person "similarly situated" to a spouse, parent, or guardian of the victim.  *See*
7  *White*, 328 F.3d at 1369 (one-year cohabitation); *Shelton*, 325 F.3d at 563 (two-month cohabitation).
8  Courts have also considered whether prior cohabitants are persons "similarly situated to a spouse" and
9  cited approvingly the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF)'s long-standing
10 interpretation that Section 922(g)(9) applies to both currently and former cohabitants.  *Woods v. City &*
11 *Cnty. of Denver*, 62 F. App'x 286, 287–88 (10th Cir. 2003) (citing 1998 ATF advisory opnion
12 interpreting "similarly situated to a spouse" to apply to "anyone who was domiciled in an intimate
13 relationship with the victim of the offense either at the time of, or at any time prior to the offense.");
14 *United States v. Lewitzke*, 176 F.3d 1022, 1025 (7th Cir. 1999) (citing same 1998 ATF advisory opinion
15 approvingly).  Plaintiff's prior cohabitation relationship with the victim is accordingly covered by
16 Section 922(g)(9).

17      Nor is whether the 1997 court made a factual determination regarding the cohabitation
18 dispositive.  In the first instance, former cohabitants are not an enumerated category of relationship
19 under the California statute, so there was no reason for state prosecutors to allege this specific
20 relationship during the 1997 proceeding.  But the specific relationship need not be an element of the
21 underlying misdemeanor for Section 922(g)(9) to apply.  *See Hayes*, 555 U.S. at 418.  The fact that the
22 cohabitation was noted in the court's record (without any indication that this fact was contested)
23 provided a legitimate basis to deny Plaintiff access to firearms under Section 922(g)(9).  A similar issue
24 arose in *United States v. Chovan*, where a domestic violence misdemeanant's partner called to report
25 another incident but there was no arrest or charge.  The Ninth Circuit still found the fact of this report
26 relevant to the Section 922(g)(9) analysis and found that the statute applied:  "Although Chovan was not
27 arrested for domestic violence, we nonetheless consider the March 2010 domestic abuse call and [the
28 victim]'s statements. The call is part of the record. And it should be considered, especially in light of

one of the underlying rationales of § 922(g)(9): acts of domestic violence are under-reported and often do not lead to arrest or conviction." 735 F.3d 1127, 1141 (9th Cir. 2013).

Accordingly, because Plaintiff is prohibited from receipt of a firearm pursuant to Section 922(g)(9), he cannot state a claim under 18 U.S.C. 925A and Count I must be dismissed.

### B.  The Statute at Issue Does Not Violate the Second Amendment

If the Court dismisses Count I for the reasons set forth above, the remaining counts should also be dismissed because there is no remaining justiciable controversy between Plaintiff and Defendant Garland. *See* 28 U.S.C. § 2201 (declaratory relief requires "actual controversy"); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (issuing declaratory judgment requires controversy "between parties having adverse legal interests, of sufficient immediacy and reality").

Additionally, Count II should be dismissed because the statute at issue does not violate the Second Amendment (and recent Supreme Court precedent is not to the contrary) for at least two reasons: the Second Amendment only applies to law-abiding citizens (which Plaintiff is not), and even if the Second Amendment did apply to Plaintiff, domestic abusers such as Plaintiff have been historically disarmed.

#### 1.  Plaintiff Is Not a Law-Abiding Citizen Protected By the Second Amendment

*First*, the Court can dismiss Count II because Plaintiff, an individual convicted of a domestic violence crime, is not "part of 'the people' whom the Second Amendment protects." *Bruen*, 142 S. Ct. at 2134. As the *Bruen* Court noted, this includes "ordinary, law-abiding, adult citizens." *Id.* But here, and unlike the defendants in *Bruen* and *District of Columbia v. Heller*, 554 U.S. 570 (2008), Plaintiff is not a law-abiding citizen. He has been convicted of a crime involving domestic violence. Such a person falls outside the scope of the Second Amendment, as interpreted according to its plain language and historical meaning. *See Heller*, 554 U.S. at 577. And, because Section 922(g)(9) solely regulates the bearing of guns by adjudicated criminals, it operates entirely outside the scope of the Second Amendment. As the Ninth Circuit noted in *United States v. Chovan*, "Although [Chovan] asserts his right to possess a firearm in his home for the purpose of self-defense, we believe his claim is not within the core right identified in *Heller* – the right of a law-abiding, responsible citizen to possess and carry a weapon for self-defense – by virtue of [Chovan]'s criminal history as a domestic violence

misdemeanant." 735 F.3d at 1138 (quoting *United States v. Chester*, 628 F.3d 673, 682-83 (4th Cir. 2010)). [4] So too here: as a domestic violence misdemeanant, Plaintiff is outside the protection of the Second Amendment's core right.

This conclusion is consistent with the *Bruen* Court's analysis, which reiterated that "the right secured by the Second Amendment is not unlimited." *Bruen*, 142 S. Ct. at 2128 (*quoting Heller*, 554 U.S. at 626). As Justice Kavanaugh noted in his concurrence in *Bruen*, the *Heller* Court had already made clear that "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, . . . [which are] only examples [and] . . . does not purport to be exhaustive." *Id.* at 216 (*quoting Heller*, 554 U.S. at 626–27 & n.26; *citing McDonald v. Chicago*, 561 U.S. 742, 786 (2010) (plurality opinion)). Simply put, a determination that Plaintiff, as a person convicted of a domestic violence crime, is outside the protections of the Second Amendment is consistent with *Bruen* and *Heller*.

### 2.  Domestic Abusers Have Historically Been Disarmed

*Second*, domestic abusers have historically been restricted from firearm ownership and possession. As the *Bruen* Court noted, if the Second Amendment applies, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." 142 S. Ct. at 2126. The historical record demonstrates that violent criminals could be and were disarmed during the founding period: from the colonial era, to the ratification of the Constitution and Bill of Rights, to the days of the early republic, violent criminals and those who harmed their domestic partners were subject to limitations of their rights, including disarmament.

#### (i)  Those with a propensity for violence were prevented from bearing arms during the founding period.

Beginning in the colonial period, attainder statutes deprived the "disaffected" and "delinquent[ ]" of various rights, including the right to bear arms. *United States v. Coombes*, No. 22-CR-00189, 2022 WL 4367056, at *5 (N.D. Okla. Sept. 21, 2022). Similarly, in the province of New York, "persons convicted of a felony could not own property or chattels[,]" thus precluding them from owning firearms.

---

[4] *Chovan*'s subsequent holding that "by prohibiting domestic violence misdemeanants from possessing firearms, § 922(g)(9) burdens rights protected by the Second Amendment," is inconsistent with *Bruen*'s holding that the Second Amendment only applies to "law-abiding" citizens.

*Id.* at *6. These statutes provide a helpful historical analogue indicating that similar regulations are consistent with the Nation's historical tradition of firearms regulation. *Id.* at *5; *see also Bruen*, 142 S. Ct. at 2133 (requiring "a well-established and representative historical analogue, not a historical twin[ ]") (emphasis omitted).

Those who ratified the Constitution and proposed the Bill of Rights also envisioned that those with a propensity for violence would be denied the right to bear arms. The precursor to the Second Amendment proposed at the Pennsylvania ratifying convention stated that citizens could not be disarmed "unless for crimes committed, or real danger of public injury." *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc). Said proposal did not distinguish between misdemeanors and felonies, consistent with a broad historical view that criminals of all types were not automatically entitled to own firearms. Accordingly, at the time the Second Amendment was ratified, ". . . the right to arms [did] not preclude laws disarming the unvirtuous (i.e. criminals) or those who, like children or the mentally unbalanced, are deemed incapable of virtue." *United States v. Vongxay*, 594 F.3d 1111, 1114 (9th Cir. 2010) (quoting Don B. Kates, Jr., *The Second Amend.: A Dialogue*, 49 Law & Contemp. Probs. 143, 146 (Winter 1986)).

Further, the state legislatures in the founding era disarmed those they considered unwilling to follow the law. For example, "[i]n 1787, the Massachusetts legislature passed a law setting out the terms for pardons by the governor for persons who had been involved in Shay's rebellion against the state in the previous year." Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L. Rev. 487, 507 (2004). The rebels were generally permitted to seek a pardon from the governor, but had to take an oath of allegiance to the state and to "deliver his arms to the state for a period of three years." *Id.* at 507-08. Pennsylvania similarly disarmed those unwilling to proclaim their loyalty to the state under the Test Acts (though without a time limit). Saul Cornell, *"Don't Know Much About History" the Current Crisis in Second Amendment Scholarship*, 29 N. Ky. L. Rev. 657, 670 (2002).

"In sum, founding-era legislatures categorically disarmed groups of people they judged to be a threat to the public safety." *Kanter v. Barr*, 919 F.3d 437, 458 (7th Cir. 2019) (Barrett, J., dissenting). As a result, Section 922(g)(9) is "consistent with this Nation's historical tradition of firearm regulation."

MOTION TO DISMISS
3:22-CV-09076-JSC                                                  9

*See Bruen*, 142 S. Ct. at 2126, 2132. Specifically, historical restrictions on classes of people deemed to be dangerous, or lacking in "virtue," provide a "well-established and representative historical analogue" to Section 922(g)(9). This historical precedent is also consistent with the legislative history of Section 922(g)(9), a statute intended to remove firearms from those who had previously demonstrated a propensity for violence against their partners. *See United States v. Belless*, 338 F.3d 1063, 1067 (9th Cir. 2003), *abrogated on other grounds by United States v. Castleman*, 572 U.S. 157 (2014) ("The purpose of the statute is to keep firearms out of the hands of people whose past violence in domestic relationships makes them untrustworthy custodians of deadly force."); 142 Cong. Rec. S10377, S10378 (1996) (statement of Sen. Lautenberg) (describing firearm possession by domestic batterers is "dangerous"), (statement of Sen. Wellstone) ("[A]ll too often, the only difference between a battered woman and a dead woman is the presence of a gun."). Further, Section 922(g)(9) imposes no burden on a law-abiding citizen's right because only non-law-abiding citizens are affected.

Accordingly, even if the Court determines that the Second Amendment applies to Plaintiff, Section 922(g)(9) does not violate the Second Amendment under the Supreme Court's reasoning in *Bruen* and *Heller*.

### (ii) Historical precedent reflects protections against domestic abuse during the founding era.

The fact that Section 922(g)(9) did not exist at the time of the founding does not render this specific statutory means of preventing domestic violence unconstitutional. In fact, the history shows that other protections – most notably the common-law surety process – were long available to protect victims of domestic violence.

Both *Heller* and *Bruen* looked to William Blackstone and English precedent to evaluate the meaning and application of the Second Amendment, *see Heller*, at 554 U.S. at 582; *Bruen*, 142 S. Ct. at 2128, which contain several examples of remedies available to victims of domestic violence. Blackstone observed that a husband "was prohibited to use any violence to his wife." 1 Blackstone 432. Thus, Blackstone said, "a wife may now have security of the peace against her husband; or, in return, a husband against his wife." *Id*. at 433. In one case that Blackstone cited, the wife "made oath in Court, that she was in danger of her life by [her husband]," and the court "offered to bind him with sureties,"

despite multiple affidavits attesting to the husband's "good usage" of his wife. *King v. Lord Lee*, 83 Eng. Rep. 482 (K.B. ca. 1675). In another, the husband swore out the peace against his wife. *Sims's Case*, 93 Eng. Rep. 1131 (1743-44). The English common-law system has thus allowed spouses to seek protection from abuse for centuries. *See also Lord Leigh's Case*, 84 Eng. Rep. 807 (1674) (the wife "upon affidavit of hard usage, and that she went in fear of her life, prayed security of the peace against [her husband], which was granted"); *Manby v. Scott*, 82 Eng. Rep. 1000, 1005 (Ex. 1659) (observing that a husband "cannot kill" his wife, "nor can he beat her, for the wife can seek the peace"), *as translated by* Henry Ansgar Kelly, *Rule of the Thumb and the Folklaw of the Husband's Stick*, 44 J. Legal Ed. 341, 354 (1994); *Sir Thomas Seymor's Case*, 72 Eng. Rep. 966 (K.B. ca. 1615) ("[A] wife can have the peace against her husband for unreasonable correction."), *as translated by* Kelly, 44 J. Legal Ed. at 355.

Similar remedies were available in colonial America as well. For example, "the Massachusetts Bay and Plymouth colonies had laws against spouse beating." Carolyn B. Ramsey, *The Stereotyped Offender: Domestic Violence and the Failure of Intervention*, 120 Penn. State L. Rev. 337, 344 (2015). The Massachusetts Body of Liberties similarly provided that "[e]verie marryed woeman shall be free from bodilie correction or stripes by her husband, unless it be in his owne defence upon her assalt." Massachusetts Body of Liberties § 80 (1641). Although other colonies did not protect spouses by statute, America's first family law treatise observed that a husband or wife's "violation of each other's rights, by an unjustifiable violence, is a breach of the laws of society, for which they are liable *criminaliter*." Tapping Reeve, The Law of Baron and Femme; of Parent and Child; of Guardian and Ward; of Master and Servant; and of the Powers of Courts of Chancery 65 (New Haven, Oliver Steele 1816). And, the treatise explained, a husband or wife "may institute a process against each other, the object of which is to compel them to find securities for their good behavior." *Id.* at 65–66; *see also State v. Davis*, 5 S.C.L. 3, 4 (S.C. Const. App. 1811) ("It is clear that a wife may demand sureties of the peace against her husband, and so may her husband against her."). Thus, while Section 922(g)(9) may be a recent means of protecting victims of domestic violence, there are historical analogues that allowed spouses to be protected from domestic violence. District courts have held that surety statutes were part of the Nation's historical tradition of regulating firearms. *See, e.g.*, *United States v. Perez-Garcia*, No.

22 Cr. 1581, 2022 WL 4351967, at *7 (S.D. Cal. Sept. 18, 2022) (stating that, "the Nation's historical tradition supports such targeted regulations" as Section 922(n)); *United States v. Kays*, No. 22 Cr. 40, 2022 WL 3718519, *2–3 (W.D. Okla. Aug. 29, 2022) (same).

Section 922(g)(9)'s prohibition on those who have been convicted criminally of a qualifying, predicate misdemeanor crime of domestic violence is consistent with both the longstanding history of disarming those who pose a danger to others and the longstanding history of remedies against domestic violence. Those who have been convicted of a misdemeanor crime of domestic violence pose a specific type of danger that has been regulated for centuries, as described above. The *Bruen* analysis is thus satisfied.

### 3. Every District Court to Consider This Question Post-*Bruen* Has Found Section 922(g)(9) Constitutional, and Post-*Heller* Ninth Circuit Precedent Upholds Section 922(g)(9)

*Finally*, in response to arguments similar to those set forth above, every district court that has addressed the constitutionality of Section 922(g)(9) post-*Bruen* has determined that the statute is constitutional. *See United States v. Martinez*, No. 17-CR-00257-VC, 2023 WL 1457529, at *1 (N.D. Cal. Feb. 2, 2023); *United States v. Jackson*, No. CR-22-59-D, 2022 WL 3582504, at *3 (W.D. Okla. Aug. 19, 2022); *United States v. Nutter*, No. 2:21-CR-00142, 2022 WL 3718518, at *8 (S.D.W. Va. Aug. 29, 2022) ("Nothing in the historical record suggests a popular understanding of the Second Amendment at the time of the founding that extended to preserving gun rights for groups who pose a particular risk of using firearms against innocent people."); *United States v. Bernard*, No. 22-CR-03 CJW-MAR, 2022 WL 17416681, at *6 (N.D. Iowa Dec. 5, 2022); *United States v. Gleaves*, No. 3:22-CR-00014, 2023 WL 1791866, at *4 (M.D. Tenn. Feb. 6, 2023); *United States v. Hoeft*, No. 4:21-CR-40163-KES, 2023 WL 2586030, at *4 (D.S.D. Mar. 21, 2023); *United States v. Farley*, No. 22-CR-30022, 2023 WL 1825066 (C.D. Ill. Feb. 8, 2023); *United States v. Hammond*, No. 4:22-cr-177-SHL-HCA, 2023 WL 2319321 (S.D. Iowa Feb. 15, 2023); *United States v. King*, No. CR-22-488-J, 2023 U.S. Dist. LEXIS 55714 (W.D. Okla. Mar. 9, 2023). This Court should do the same.

Further, existing post-*Heller* Ninth Circuit precedent holds that Section 922(g)(9) is constitutional in light of *Heller* – a case that *Bruen* did not abrogate. *Fisher v. Kealoha*, 855 F.3d 1067, 1071 (9th Cir. 2017) (upholding 18 U.S.C. § 922(g)(9) as constitutional post-*Heller*); *see also Bruen*,

142 S. Ct. at 2126 (explaining that its holding was "[i]n keeping with *Heller*."). This Court is bound by Ninth Circuit precedent unless that precedent is "effectively overruled." *Miller v. Gammie*, 335 F.3d 889, 890 (9th Cir. 2003) (en banc). Precedent is "effectively overruled" when "the reasoning or theory of . . . prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority." *Id.* at 893. *Bruen* was silent on the question of Section 922(g)(9). And *Bruen*'s reasoning is not "clearly irreconcilable" with Ninth Circuit authority upholding Section 922(g)(9) as constitutional. *See Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring) (explaining that *Bruen* should not "be taken to cast doubt on longstanding prohibitions of firearms by felons" which *Heller* characterized as "presumptively lawful regulatory measures" (quoting *Heller*, 554 U.S. at 626, 627 n.26)); *id.* at 2189 (Breyer, J., dissenting) ("[I] understand the Court's opinion today to cast no doubt on that aspect of *Heller*'s holding [that laws barring felons from possessing firearms are presumptively lawful]."). Circuit precedent is not overruled or "clearly irreconcilable" just because an intervening Supreme Court case like *Bruen* is in "some tension" with it. *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018). Unless and until the Ninth Circuit revisits *Kealoha* in light of *Bruen*, this Court should follow the Ninth Circuit's guidance and find that Section 922(g)(9) is constitutional.

### C. Any Section 1983 Claims (Counts II and III) Against a Federal Official Must Be Dismissed

Finally, to the extent the Complaint asserts claims under 42 U.S.C. § 1983 against Defendant Garland, these claims must be dismissed. Section 1983 allows for suits against anyone who acts "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia" and deprives "any rights, privileges, or immunities secured by the Constitution and laws." *See* 42 U.S.C. § 1983. While Section 1983 applies to state officials, it does not permit actions against federal officials. *Billings v. United States,* 57 F.3d 797, 801 (9th Cir. 1995) ("§ 1983 provides no cause of action against federal agents acting under color of federal law.").

Here, Count II appears to arise at least in part under Section 1983. *See* Compl. ¶ 60 ("A action [sic] brought pursuant to section 1983 of Title 42 of the United States Code is proper . . ."). Count III appears to arise entirely under Section 1983. *See* Compl. ¶ 65 ("Defendants, acting under color of law when denying Plaintiff's constitutional rights, are therefore liable as individuals and in their official

capacity under section 1983 of Title 42 of the United States Code."). Any such claims against Defendant Garland must be dismissed.

## VI. CONCLUSION

For the foregoing reasons, the Court should grant Defendant's motion and dismiss all claims against Defendant Merrick B. Garland.

DATED: May 4, 2023

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

*/s/ Michael A. Keough*
MICHAEL A. KEOUGH
Assistant United States Attorney

*Attorneys for Defendants*

MOTION TO DISMISS
3:22-CV-09076-JSC                                    14