C.D. Michel – SBN 144258
Mathew D. Cubeiro – SBN 291519
Alexander A. Frank – SBN 311718
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Boulevard, Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: mcubeiro@michellawyers.com

Attorneys for Plaintiff Brad D. Brinson

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAD D. BRINSON, an individual;<br><br>Plaintiff,<br><br>v.<br><br>MERRICK B. GARLAND, in his official capacity as Attorney General of the United States; ROB BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-10<br><br>Defendants. | Case No.: 22-cv-09076-JCS<br><br>**PLAINTIFF'S OPENING BRIEF RE: DISCOVERY AND STANDARD OF REVIEW**<br><br>Hearing Date: May 16, 2024<br>Hearing Time: 10 a.m.<br>Courtroom:   8<br>Judge:       Hon. Jacqueline Scott Corley<br><br>Action Filed: December 22, 2022 |

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................................... 1

Statement of Facts ................................................................................................................. 1

Argument ............................................................................................................................... 4

I.     The Nature of Brinson's Relationship to the Alleged Victim Was Established by the 1997
       Conviction; It Does Not Trigger a Misdemeanor Crime of Domestic Violence Prohibition ......... 4

II.    Under Existing Precedent, Garland Is Not Entitled to Conduct Discovery Because the Relevant
       Inquiry Is Limited to the Facts and Documents That Are Already Included in the Record ........... 6

III.   Res Judicata and Estoppel Prohibit the Government from Relitigating Brinson's Relationship
       Previously Decided by the California Court ................................................................. 11

IV.    Because There Is No Genuine Dispute that Brinson's 1997 Conviction Does Not Bar Firearm
       Possession, Brinson Hereby Moves for Summary Judgment ..................................................... 12

Conclusion ............................................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Celotex Corp v. Catrett*,
477 U.S. 317 (1986) ............................................................................................................ 12

*Descamps v. United States*,
570 U.S. 254 (2013) ......................................................................................................... 6, 9

*Fernandez-Ruiz v. Gonzales*,
466 F.3d 1121 (9th Cir. 2006) ............................................................................................. 9

*Hernandez-Martinez v. Ashcroft*,
343 F.3d 1075 (9th Cir. 2003) ............................................................................................. 9

*Matsushita Elec. Indus. Co. v. Epstein*,
516 U.S. 367 (1996) ........................................................................................................... 11

*McGowan v. City of San Diego*,
208 Cal. App. 3d 890 (1989) ............................................................................................. 11

*Omargharib v. Holder*,
775 F.3d 192 (4th Cir. 2014) ............................................................................................... 9

*Penuliar v. Gonzales*,
435 F.3d 961 (9th Cir. 2006) ............................................................................................... 9

*Ruiz-Morales v. Ashcroft*,
361 F.3d 1219 (2004) .......................................................................................................... 9

*Shepard v. United States*,
544 U.S. 13 (2005) ........................................................................................... 8, 9, 11, 13

*Taylor v. United States*,
495 U.S. 575 (1990) ........................................................................................................ 6, 9

*Teitelbaum Furs, Inc. v. Dominion Ins. Co.*,
58 Cal. 2d 601 (1962) ....................................................................................................... 11

*United States v. Belless*,
338 F.3d 1063 (9th Cir. 2003) ........................................................................................... 10

*United States v. Booker*,
543 U.S. 220 (2005) ............................................................................................................ 8

*United States v. Castleman*,
572 U.S. 157 (2014) ........................................................................................... 9, 10

*United States v. Chatman*,
869 F.2d 525 (9th Cir. 1989) ..................................................................................... 6

*United States v. Corona-Sanchez*,
291 F.3d 1201 (9th Cir. 2002) ................................................................................. 10

*United States v. Gaudin*,
515 U.S. 506 (1995) ................................................................................................... 8

*United States v. Hayes*,
377 F. Supp. 2d 540 (N.D. W.Va. 2005) ....................................................... 7, 8, 10

*United States v. Hayes*,
482 F.3d 749 (4th Cir. 2007) ..................................................................................... 8

*United States v. Hayes*,
555 U.S. 415 (2009) ........................................................................................ passim

*United States v. Nobriga*,
408 F.3d 1178 (9th Cir. 2005) ............................................................................ 2, 10

*United States v. Nobriga*,
474 F.3d 561 (9th Cir. 2006) ................................................................................... 10

*United States v. Orozco-Orozco*,
94 F.4th 1118 (2024) ............................................................................................... 10

*United States v. Vinson*,
794 F.3d 418 (4th Cir. 2015) ..................................................................................... 9

**Statutes**

18 U.S.C. § 921 ................................................................................................. passim

18 U.S.C. § 922 ................................................................................................. passim

18 U.S.C. § 924 ........................................................................................................... 8

18 U.S.C. § 925A ............................................................................................. 1, 8, 13

28 U.S.C. § 1738 ....................................................................................................... 11

Bipartisan Safer Communities Act,
Pub. L. No. 117-159, § 12005, 136 Stat. 1313 (2022) ......................................... 4, 5

Cal. Pen. Code § 243(e) ................................................................................................ 1, 7, 11

**Rules**

Fed R. Civ. Evid. 801 ..................................................................................................... 13

Fed R. Civ. P. 56 ............................................................................................................ 12

TABLE OF AUTHORITIES

**INTRODUCTION**

On February 14, 2024, this court issued an order following an initial case management conference regarding discovery and the applicable standard of review. The order noted that, after reviewing the pleadings and the court's order denying Defendant Garland's motion to dismiss, neither the parties nor the Court had addressed whether the government may supplement the administrative record by conducting discovery in an action under 18 U.S.C. § 925A. Nor had the parties addressed the standard of review. In response to this order, the parties filed a joint case management statement on February 28, 2024, and another case management conference was held. At the second case management conference, the Court revealed that it was inclined to allow Garland to conduct discovery under *United States v. Hayes*, 555 U.S. 415 (2009), but would allow Plaintiff Brinson to brief the issue before deciding.

This Court should deny Garland's request. The issue of Brinson's relationship in the predicate offense was expressly decided by his 1997 criminal conviction, and no amount of supplementing the record three decades later can alter that judicially established finding of fact. Under existing Supreme Court and Ninth Circuit precedents, including the Supreme Court's decision in *Hayes*, Garland has no right to leave to conduct unnecessary and costly discovery in an action under 18 U.S.C. § 925A. What's more, Garland is barred by res judicata and collateral estoppel from re-litigating the issue of Brinson's relationship with his alleged victim here. Finally, because there is no genuine dispute of material fact about Brinson's relationship in the predicate offense, Brinson hereby moves for summary judgment on his claim that his attempted firearm purchase was unlawfully denied under 18 U.S.C. § 925A.

**STATEMENT OF FACTS**

In 1997, Plaintiff Brad Brinson was charged with and pleaded to a misdemeanor violation of California Penal Code section 243(e). Compl. ¶ 31. At the time of Brinson's conviction, the law criminalized battery "against a spouse, person with whom the defendant is cohabiting, person who is the parent of the defendant's child, noncohabiting former spouse, fiancé, fiancée, or a person with whom the defendant currently has, or has previously had, a *dating relationship*," Cal. Penal Code § 243(e). The criminal complaint identified the alleged victim and expressly noted that she was involved in a "dating relationship" with Brinson. *Id.*; *see also* Compl. ¶ 31 & Ex. A, at 6-7 (email from Assistant General Counsel William Finch finding that Brinson's relationship to the victim, as a matter of fact and

law, is and was a dating relationship").

Under 18 U.S.C. § 922(g)(9), any person convicted of a "misdemeanor crime of domestic violence" is barred from possessing firearms for life. At the time of Brinson's conviction, however, federal law defined a "misdemeanor crime of domestic violence" as an offense that:

> [H]as, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33)(A)(ii) (amended June 25, 2022). The federal definition did not then include—and was not intended to include—dating relationships like the one that, "as a matter of fact and law," Brinson shared with the alleged victim. Indeed, at the time of Brinson's conviction, a dating relationship was insufficient grounds for a misdemeanor crime of domestic violence and thus did not trigger the firearm restrictions of 18 U.S.C. § 922(g)(9). *United States v. Nobriga*, 408 F.3d 1178, 1183 (9th Cir. 2005).

In 2014, Brinson tried to buy a firearm lawfully but was denied. Compl. ¶¶ 3, 33; *see id.* Ex. A. He was later informed that his attempted purchase was denied because his 1997 conviction had been labeled a "misdemeanor crime of domestic violence" under section 922(g)(9). *Id.* Brinson retained counsel who contacted both Deputy Attorney General Kimberly Granger of the California Department of Justice and Assistant General Counsel William Finch from the Office of the General Counsel of the Federal Bureau of Investigation. *Id.* ¶ 34, Ex. A. In his correspondence with both Ms. Granger and Mr. Finch, counsel for Brinson expressly cited the effect of *United States v. Hayes*, 555 U.S. 415 (2009) to Brinson's circumstances, reasoning that:

> [B]ecause the District Attorney pled and proved, by Mr. Brinson's Nolo Contendere plea to Count 1, only a dating relationship as defined in PC 243(f)(11) rather than a relationship as set forth in 18 U.S.C. 921(a)(33)(A)(ii), and because the nature of the relationship between Ms. Wacholz and Mr. Brinson was established in the court record and is now res judicata, no extrinsic evidence may be considered (*United States v. Hayes* (2009) 555 U.S. 415).

Compl. Ex. A, at 5-7 (email to Ms. Granger referencing communication with Mr. Finch that provided identical analysis).

Mr. Finch agreed with that assessment. Compl. ¶ 35, Ex. A, at 6-7. Having reviewed all the

materials that counsel provided, he concluded that Brinson "is not federally prohibited by his August 21, 1997 conviction" and that "*the factual and legal parameters of his case are established by that conviction*," including the fact that Brinson's "relationship to the victim, as a matter of law and fact, is and was a dating relationship." *Id*. (emphasis added). "The police report cannot invalidate those judicially established findings for purposes of the Brady Act." *Id.* Ex. A, at 7. Mr. Finch thus advised that Brinson's relationship to the alleged victim "does not qualify the conviction as a misdemeanor crime of domestic violence under 18 U.S.C. 922(g)(9) and 921(a)(33), the police report notwithstanding." *Id.* Ex. A, at 6.

Brinson's attorney forwarded Mr. Finch's determination to Ms. Granger, reiterating that Brinson's relationship with the alleged victim was a dating relationship and that "because the nature of the relationship between [the victim] and Mr. Brinson was established in the court record and is now res judicata, no extrinsic evidence may be considered." *Id.* ¶ 36, Ex. A, at 5-6. Ms. Granger tried to verify Mr. Finch's determination but learned that he had retired. *Id.* ¶ 37, Ex. A, at 5. Ms. Granger thus consulted a second FBI attorney, Mr. Drew Crislip, on the matter. *Id.* She later confirmed that Mr. Crislip "agreed with Mr. Finch's determination" and that because Brinson's prohibition was limited to a federal issue, he could reapply for a gun purchase. *Id.* ¶ 38, Ex. A, at 3.

Following the 2014 communications with Ms. Granger, Brinson lawfully purchased firearms and ammunition without issue for years. *Id.* ¶ 39, Ex. A, at 2. But on November 23, 2018, he was once again denied an attempted firearm purchase. *Id.* ¶ 40, Ex. A, at 2. Brinson was informed that his 1997 conviction was again being labeled a "misdemeanor crime of domestic violence," and he was thus barred under 18 U.S.C. 922(g)(9) from owning or possessing firearms. *Id.* Brinson's counsel thus contacted Deputy Attorney General Robert Wilson, Ms. Granger's successor, and included a copy of his earlier correspondence with Ms. Granger. *Id.* ¶ 41, Ex. A. Brinson's counsel also appealed the denial to the FBI's Voluntary Appeal File unit. *See id.* Ex. D. On July 12, 2022, the VAF unit concluded that Brinson's prior conviction resulted in a "misdemeanor crime of domestic violence" prohibition under section 922(g)(9). *Id.* Unable to resolve the issue after exhausting all possible administrative remedies, Brinson filed this lawsuit.

Long after the events giving rise to this action, the federal definition of "misdemeanor crime of domestic violence" was amended in 2022 to include persons who had "a current or recent former dating

relationship with the victim." Bipartisan Safer Communities Act, Pub. L. No. 117-159, § 12005, 136 Stat. 1313, 1332 (2022) (codified at 18 U.S.C. § 921(a)(33)(A)(ii)). As used here, the term "dating relationship" is defined as "a relationship between individuals who have or have recently had a continuing serious relationship of a romantic or intimate nature." 18 U.S.C. § 921(a)(37)(A). The new definition also provides guidelines for determining whether a relationship is a "dating relationship" under federal law, including consideration of (1) the length of the relationship, (2) the nature of the relationship, and (3) the frequency and type of interaction between the individuals involved in the relationship. *Id.* § 921(a)(37)(B).

A person convicted of an offense that qualifies as a "misdemeanor crime of domestic violence" based on a "dating relationship" under the new federal definition *are not prohibited from owning or possessing firearms for life*. They are instead subject to a *five-year* ban as long as they have no more than one such conviction and are not otherwise prohibited. *Id.* § 921(a)(33)(C).[1] Importantly, the new federal definition" is not retroactive; it does "not apply to any conviction of a misdemeanor crime of domestic violence entered before the date of enactment of th[e Bipartisan Safer Communities] Act." Pub. L. No. 117-159, § 12005, 136 Stat. 1313, 1332.

## ARGUMENT

### I. THE NATURE OF BRINSON'S RELATIONSHIP TO THE ALLEGED VICTIM WAS ESTABLISHED BY THE 1997 CONVICTION; IT DOES NOT TRIGGER A MISDEMEANOR CRIME OF DOMESTIC VIOLENCE PROHIBITION

The 1997 criminal complaint to which Brinson pled nolo contendere refers to Brinson's relationship with the alleged victim only as a "dating relationship," Compl. ¶ 31, Ex. A, at 5-7, precluding any other relationship type described in section 243(e)(1), *see id.* Ex. A, at 6-7. This includes those that could be construed as a spouse, *cohabitant*, parent of a child in common, noncohabiting former spouse, fiancé, or fiancée. As noted above, a "misdemeanor crime of domestic violence" was defined under federal law at the time of Brinson's conviction as a misdemeanor involving the use of force

---

[1] "[I]n the case of a person who has not more than 1 conviction of a misdemeanor crime of domestic violence against an individual in a dating relationship, and is not otherwise prohibited under this chapter, the person shall not be disqualified from shipping, transport, possession, receipt, or purchase of a firearm under this chapter if 5 years have elapsed." 18 U.S.C. § 921(a)(33)(C).

against *only*: (1) "a current or former spouse, parent, or guardian of the victim"; (2) "a person with whom the victim shares a child in common"; (3) "a person who is cohabitating with or has cohabitated with the victim as a spouse, parent, or guardian"; or (4) "a person similarly situated to a spouse, parent, or guardian of the victim." 18 U.S.C. § 921(a)(33)(A)(ii) (amended June 25, 2022). It did not apply to those in "dating relationships" with their alleged victims. As such, both Mr. Finch and Mr. Crislip determined in 2014 that Brinson's relationship with the alleged victim "does not qualify the conviction as a misdemeanor crime of domestic violence under 18 U.S.C. 922(g)(9) and 921(a)(33)," regardless of any unsubstantiated claims about the nature of the relationship found in the police report. *Id.* Ex. A, at 6.

Even so, based on those same unsubstantiated claims, Garland argued in his motion to dismiss that Brinson had "formally lived with the victim for one year," making them former cohabitants—a relationship that does trigger the federal firearm restriction. Def. Garland's Mot. to Dismiss 3. And because this Court already ruled that Garland "cannot rely on hearsay reports to support the conclusion of ineligibility as a matter of law," Order Re Def. Garland's Mot. to Dismiss 8, he now relies on those hearsay reports to justify leave to conduct an unnecessary hunt for extrinsic evidence of the nature of Brinson's relationship with the alleged victim. But again, "the factual and legal parameters of his case are established by th[e 1997] conviction," including the fact that Brinson was in a "dating relationship" with the alleged victim. Compl. Ex. A, at 6. "The police report cannot invalidate those judicially established findings…." *Id.* Ex. A, at 7. Nor could whatever new evidence Garland might dig up nearly 30 years later.

In short, the nature of Brinson's relationship to the alleged victim was expressly established by his 1997 conviction to be a "dating relationship." That conviction sets the "factual and legal parameters" of this case. And it does not trigger a misdemeanor crime of domestic violence firearm prohibition. At best, Brinson's conviction would fall under the "dating relationship" category of misdemeanor crimes of domestic violence only now recognized by 18 U.S.C. § 922(g)(9). But that category of predicate offense does "not apply to any conviction . . . entered before the date of enactment of the [Bipartisan Safer Communities] Act" in 2022. Pub. L. No. 117-159, § 12005, 136 Stat. 1313, 1332. Even if it did apply, it results in just a five-year prohibition following a conviction, not a lifetime ban. 18 U.S.C. § 921(a)(33)(C). As Brinson was convicted in 1997, more than two decades elapsed between Brinson's

PLAINTIFF'S OPENING BRIEF RE: DISCOVERY AND STANDARD OF REVIEW

conviction and the 2018 firearm purchase denial at issue. There is thus no legal justification to prohibit Brinson from owning or possessing firearms under 18 U.S.C. §922(g)(9).

## II.  UNDER EXISTING PRECEDENT, GARLAND IS NOT ENTITLED TO CONDUCT DISCOVERY BECAUSE THE RELEVANT INQUIRY IS LIMITED TO THE FACTS AND DOCUMENTS THAT ARE ALREADY INCLUDED IN THE RECORD

When deciding whether a past state court conviction triggers a related federal restriction, including the firearm prohibition for persons convicted of misdemeanor crimes of domestic violence under 18 U.S.C. § 922(g)(9), courts use a "categorical approach," which compares the elements of the underlying state conviction with elements of the related federal statute. *Descamps v. United States*, 570 U.S. 254, 257 (2013). Under the "formal categorical approach," courts look to the statutory elements of defendants' predicate offenses but not "to the particular facts underlying those convictions." *Id.* at 260-61 (citing *Taylor v. United States*, 495 U.S. 575, 600 (1990)).[2] There is, however, a "narrow range of cases" subject to a "modified categorical approach," under which courts may look beyond the statutory elements, but even then, they look only to a narrow category of extrinsic evidence, including "the charging paper and jury instructions." *Id.* at 261. Lower courts resort to this "modified" approach when the underlying state-law offense includes alternative elements, not all of which would trigger the relevant federal statute. *Id.* at 261-62.

Such was the case in *United States v. Hayes*, 555 U.S. 415 (2009), where the Supreme Court ruled "that a domestic relationship, although it must be established beyond a reasonable doubt in a 922(g)(9) firearms possession prosecution, need not be a defining element of the predicate [state law] offense" in order to constitute a misdemeanor crime of domestic violence under federal law. 555 U.S. 415, 418 (2009) (discussing Gun Control Act of 1968, 18 U.S.C. § 921 et seq.). In other words, the Court held that the state law describing the predicate offense need not "include, as a discrete element, the existence of a domestic relationship between the offender and victim." *Id.* at 420. But "[t]o obtain a conviction in

---

[2] *See also United States v. Chatman*, 869 F.2d 525, 529 (9th Cir. 1989) (noting that when Congress uses a common law term in a federal criminal statute without otherwise defining it, Congress is presumed to adopt the meaning given that term at common law, and that treatment of prior convictions other than categorically would involve the sentencing federal court in a series of "ad hoc mini-trials" long after the events in issue had passed).

a § 922(g)(9) prosecution," the government must prove "that the victim of the predicate offense was the defendant's current or former spouse or was related to the defendant in another specified way." *Id.* at 426. In the context of a prosecution under section 922(g)(9), then, the factfinder might have to look beyond the four corners of the underlying state statute to decide whether the predicate offense triggers a section 922(g)(9) restriction.

But that limited holding does not support a claim for the wholesale importation of any extrinsic evidence about the nature of the domestic relationship—especially evidence that would contradict relevant judicially established findings of fact. Again, Brinson was convicted of a violation of Penal Code section 243 on the grounds that he was in a "dating relationship" with the alleged victim, not some other type of domestic relationship. Compl. ¶ 31. That finding is settled as a matter of both fact and law. *See supra* Part I. At the time of Brinson's conviction, "dating relationships" were not included among the types of domestic relationships recognized in 18 U.S.C. § 921(a)(33)(A)(ii) on its face. As such, *Taylor* and *Descamps* demand the application of the "formal categorical approach" in deciding whether Brinson's criminal conviction qualifies as a "misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9); it does not.

Even if this court were to apply the "modified categorical approach" applied in *Hayes*, however, the result is the same. The modified approach does not authorize the government to conduct discovery,[3] and the limited extrinsic evidence and judicially decided facts that *may* be referenced do not establish that Brinson's conviction qualified as a federal "misdemeanor crime of domestic violence" when it was entered. That is because, even though *Hayes* authorized courts to look beyond the elements of the underlying state offense, it did not disturb preexisting precedent on what sorts of extrinsic evidence the courts may look to when deciding whether the federal prohibition applies.

Reviewing the underlying trial court opinion may help to better understand the *Hayes* ruling and its impact. As the trial court held in *United States v. Hayes*, 377 F. Supp. 2d 540, 541 (N.D. W.Va. 2005),

---

[3] Nowhere in the *Hayes* ruling is there any mention of discovery at all. The majority opinion instead focuses on the use of specific words and punctuation, as well as the legislative history behind the federal definition of "misdemeanor crime of domestic violence" as that phrase is defined in 18 U.S.C. § 921(a)(3)(A).

1   whether a predicate offense qualifies as a misdemeanor crime of domestic violence "is a question of law

2   rather than a separate and essential element of a 922(g)(9) violation." Citing *United States v. Gaudin*, 515

3   U.S. 506 (1995) and *United States v. Booker*, 543 U.S. 220 (2005), the trial court added that the Sixth

4   Amendment "gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt,

5   his guilt of every element of the crime with which he is charged ... and '*any particular fact that the law*

6   *makes essential to his punishment*.'" *Id*. (emphasis added).[4] The lower court also recognized that, in the

7   context of an enhanced sentencing provision of the Armed Career Criminals Amendment Act of 1986,

8   the Sixth Amendment "requires a sentencing court to *limit itself to examining the statute of conviction,*

9   *charging document, plea agreement, plea transcript and any explicit factual finding by the trial judge*

10  *to which the defendant assented* in determining whether a prior offense is a felony for enhancement

11  purposes." *Id*. (citing *Shepard v. United States*, 544 U.S. 13, 16 (2005)) (double emphasis added).

12      The Fourth Circuit reversed, holding that to qualify as a misdemeanor crime of domestic violence,

13  the predicate offense must have as an element a domestic relationship. *United States v. Hayes*, 482 F.3d

14  749 (4th Cir. 2007). The government petitioned for certiorari, and the Supreme Court reversed. *Hayes*,

15  555 U.S. at 429-30. But the Court's decision did not cast doubt on the trial court's application of

16  *Shepard*, *Gaudin*, or *Booker*. On the contrary, the Court's decision does not even discuss its rulings in

17  *Gaudin* and *Booker*. And the only mention of *Shepard* is by the dissent, which warns that the majority

18  opinion requires juries and courts to look at the particular facts of a prior conviction rather than the

19  elements of the predicate offense. *Id*. at 436 (Roberts, C.J., dissenting). But because *Shepard* remains

20  good law, such inquiries are still limited to "the statute of conviction, the charging document, plea

21  agreement, plea transcript, and any explicit factual finding by the trial judge." *See* 544 U.S. at 16. Indeed,

22  a key distinction can (and should) be drawn between looking "at the particular facts of a prior conviction"

23  and trying to establish *new facts* not contained in the record of the predicate offense, as Garland is

24  attempting to do here.

---

26  [4] Ultimately, the district court denied Hayes' motion to dismiss, as the evidentiary limits apply to
27  *judicial* fact-finding, not findings of fact made by a jury, and they do not apply when the government is
    being put to its burden of proof at trial. *Hayes*, 377 F. Supp. 2d at 542-43. In *Hayes*, the government
28  sought to criminally prosecute Hayes under sections 922(g)(9) and 924(a)(2), while this case concerns a
    civil claim brought under section 925A.

Following its decision in *Hayes*, the Supreme Court continues to uphold *Shepard* as good law. For example, in 2013, the Court explained that a hypothetical the Court raised in *Taylor* had become real, forcing the Court to address the issue in *Shepard*. *Descamps*, 570 U.S. at 262 (citing *Taylor*, 495 U.S. at 261-62) (discussing *Taylor*'s hypothetical "statute with alternative elements—more particularly, a burglary statute (otherwise conforming to the generic crime) that prohibits 'entry of an automobile as well as a building'" that would justify the application of the "modified categorical approach"). In *Descamps*, the majority discussed with approval *Shepard*'s holding that, when reviewing convictions based on divisible criminal statutes, courts may review only "'a restricted set of materials—here, "the terms of a plea agreement or transcript of colloquy between judge and defendant"—to determine if the defendant had pleaded guilty'" to a predicate offense. *Id.* (quoting *Shepard*, 544 U.S. at 26).

The Ninth Circuit has likewise continued to hold that *Taylor*'s categorical approach is to be used when determining whether a predicate offense qualifies as a misdemeanor crime of domestic violence under federal law. *See, e.g.*, *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006) (applying the categorical approach in the context of the federal Immigration and Nationality Act). But when the predicate offense does not define a categorical crime, the Ninth Circuit has applied the "modified categorical approach." *Id.* at 1132 (citing *Penuliar v. Gonzales*, 435 F.3d 961, 966 (9th Cir. 2006); *Ruiz-Morales v. Ashcroft*, 361 F.3d 1219, 1222 (2004)). Under this approach, courts may still consider only "***a limited, specified set of documents***—including 'the state charging document, a signed plea agreement, jury instructions, guilty pleas, transcripts of a plea proceeding and the judgment' ... [which] show the petitioner's conviction entailed an admission to, or proof of, the necessary elements." *Id.* (citing *Hernandez-Martinez v. Ashcroft*, 343 F.3d 1075, 1076 (9th Cir. 2003)) (double emphasis added).[5]

---

[5] The Fourth Circuit has likewise held this categorical approach as appropriate post-*Hayes* to determine whether a prior conviction renders a person prohibited under 18 U.S.C. § 922(g)(9). *United States v. Vinson*, 794 F.3d 418 (4th Cir. 2015) (citing *United States v. Castleman*, 572 U.S. 157, 168 (2014). Courts may apply a modified categorical approach where the underlying state crime "'consists of multiple, alternative elements creating several different crimes, some of which would match the generic federal offense and others that would not.'" *Id.* (*citing Omargharib v. Holder*, 775 F.3d 192, 197 (4th Cir. 2014)). But even then, this approach permits a court to "examine *a limited class of documents* to determine which of a [crime's] alternative elements formed the basis of the defendant's prior conviction." *Id.* at 421-22. (citing *Descamps*, 570 U.S. at 262-63).

PLAINTIFF'S OPENING BRIEF RE: DISCOVERY AND STANDARD OF REVIEW
Case No.: 22-cv-09076-JCS

Even before *Hayes*, the Ninth Circuit issued rulings in line with the Supreme Court's decision but still within the bounds established by *Taylor* and *Shepard*. For example, in *Corona-Sanchez*, the Ninth Circuit held that *Taylor* allows a court "to go beyond the mere fact of conviction" and "examine the record for 'documentation or judicially noticeable facts that clearly establish that the conviction'" is a predicate offense. *United States v. Corona-Sanchez*, 291 F.3d 1201, 1211 (9th Cir. 2002), superseded by statute on other grounds as stated in *United States v. Orozco-Orozco*, 94 F.4th 1118 (2024)).[6] Similarly, in *Nobriga*, the Ninth Circuit addressed whether a Hawaii conviction established the domestic relationship required to satisfy the federal definition of a misdemeanor crime of domestic violence. *Nobriga*, 408 F.3d 1178, superseded on other grounds by *United States v. Nobriga*, 474 F.3d 561 (9th Cir. 2006). The district court in *Hayes* expressly notes how the Ninth Circuit held that the *Nobriga* district court "plainly erred when it relied on a police report and a plea colloquy to determine that a misdemeanor crime of domestic violence had been committed." *Hayes*, 377 F. Supp. 2d at 542. This is important here since the Supreme Court opinion in *Hayes* never casts doubt on this reasoning.

In short, Supreme Court and Ninth Circuit precedents limit what courts may consider when determining whether a predicate offense triggers a relevant federal prohibition or statute. Those precedents have no bearing on the Supreme Court's ruling in *Hayes*, which focused exclusively on whether the domestic relationship of a predicate offense needs to be a defining element of the offense. *Hayes* makes clear that a domestic relationship need not be a defining element of the state-court conviction, and Brinson does not challenge this. But what facts a court may consider when determining

---

[6] In deciding *Hayes*, the Supreme Court expressly noted that the Fourth Circuit decision was an outlier among other circuits, creating a circuit split with all nine other circuits that had already published opinions on the matter. *Hayes*, 555 U.S. at 419. Expressly mentioned here is the Ninth Circuit's opinion in *Belless*, which held that the federal statute does not require the predicate offense to have the domestic relationship as an element of the offense. *United States v. Belless*, 338 F.3d 1063, 1067 (9th Cir. 2003), abrogated on other grounds by *Castleman*, 572 U.S. 157. Notably, *Belles* held that the record, under a modified categorical approach, serves as a predicate offense and expressly cited *Taylor*. *Id*. at 1069. As expressly stated in *Belles*, "[a]lthough the Wyoming battery statute need not include a domestic relationship as an element of the crime in order for a conviction under it to serve as a predicate offense for a conviction under the federal firearms statute, it encompasses less violent behavior than the requisite use or attempted use of physical force and thus is too broad to qualify as a "misdemeanor crime of domestic violence." *Id*.

1   whether the prohibition under 18 U.S.C. § 922(g)(9) applies are limited to the statute of conviction,

2   charging document, plea agreement, plea transcript, and any explicit factual finding by the trial judge to

3   which the defendant assented. *Shepard*, 544 U.S. at 16. Any other documents or evidence that Garland

4   seeks to obtain through discovery cannot be considered, making any such discovery irrelevant and

5   unwarranted.

6   **III.   RES JUDICATA AND ESTOPPEL PROHIBIT THE GOVERNMENT FROM RELITIGATING BRINSON'S RELATIONSHIP PREVIOUSLY DECIDED BY THE CALIFORNIA COURT**

7

8        28 U.S.C. § 1738 obligates federal courts to give the same preclusive effect to a state court

9   judgment as the courts of the state that render the judgments, which by extension include the doctrines of

10  collateral estoppel and res judicata. When faced with a state court judgment relating to an exclusively

11  federal claim, a federal court must first examine the state's laws to determine the preclusive effect of the

12  judgment. *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996) (overturning a Ninth Circuit

13  opinion that declined to evaluate the preclusive effect of a Delaware state court judgment). In California,

14  criminal cases can have collateral estoppel effects on civil cases. For example, the doctrine of collateral

15  estoppel precludes relitigating an issue in a civil case previously decided in a criminal motion to

16  suppress. *McGowan v. City of San Diego*, 208 Cal. App. 3d 890, 894 (1989). In *McGowan*, the state

17  appellate court relied, in part, on a California Supreme Court holding that "any issue necessarily decided

18  in a prior criminal proceeding is conclusively determined as to the parties if it is involved in a subsequent

19  civil action." *Teitelbaum Furs, Inc. v. Dominion Ins. Co.*, 58 Cal. 2d 601, 607 (1962).

20       Under these well-established doctrines, Garland is prohibited from relitigating the matter of

21  Brinson's relationship to the alleged victim. As noted above, the prosecutor charged Brinson with a

22  violation of Penal Code section 243 and expressly labeled Brinson's relationship a "dating relationship."

23  Compl. ¶ 31; *see also* Ex. A. The record thus conclusively establishes that Brinson's relationship was not

24  any of the other types of relationships identified in section 243, including that of a spouse, a person who

25  is the parent of Brinson's child, cohabitant, noncohabitating former spouse, fiancé, or fiancée. Notably,

26  these other relationship classifications fully encompass the possible categories of relationships that are

27  relevant in determining whether the predicate offense is a misdemeanor crime of domestic violence under

28

federal law.[7]

Nor do the doctrines of collateral estoppel or res judicata, applied here, contradict or conflict with the Supreme Court's decision in *Hayes*, which focused exclusively on whether a predicate offense requires a domestic relationship as a defining element. 555 U.S. at 426. If allowed to relitigate the issue, Garland would not simply be attempting to shore up the record but supplant it to avoid liability here.[8]

## IV.   BECAUSE THERE IS NO GENUINE DISPUTE THAT BRINSON'S 1997 CONVICTION DOES NOT BAR FIREARM POSSESSION, BRINSON HEREBY MOVES FOR SUMMARY JUDGMENT

Brinson hereby moves for summary judgment because there is "no genuine dispute as to any material fact . . . and [Plaintiff] is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); *see also Celotex Corp v. Catrett*, 477 U.S. 317, 323-24 (1986). Brinson's criminal conviction has been fully litigated. The nature of his relationship with the alleged victim was established as a matter of record. Supreme Court and Ninth Circuit precedent make clear this Court may only consider a limited set of documents and facts to determine whether his conviction qualifies as a predicate offense meeting the definition of "misdemeanor crime of domestic violence" under 18 U.S.C. § 921(a)(33)(A). Here, those underlying documents and facts leave no genuine dispute that Brinson's relationship to the alleged victim of the 1997 conviction was a "dating relationship" that does not trigger a federal prohibition.

As previously recognized by this Court, United States Attorney Finch acknowledged Brinson's 1997 conviction did not constitute a misdemeanor crime of domestic violence. His determination was confirmed by United States Attorney Drew Crislip. In both cases, these determinations were made with the express knowledge of the Supreme Corut's decision in *Hayes* as raised by Brinson's prior attorney in his communications on Brinson's behalf.

Setting aside the above, there is no genuine dispute that when Brinson was denied his attempted firearm transfer in November 2018, Garland did not have any legitimate justification to deny Brinson's

---

[7] What's more, the recent amendment to the federal definition of misdemeanor crime of domestic violence now also expressly includes "dating relationships," making any argument that Brinson's relationship was something other than a "dating relationship" disingenuous and otherwise erroneous.

[8] Notwithstanding res judicata and collateral estoppel, any compelled discovery sought by Garland in the form of interrogatories, depositions, or testimony of Brinson will raise significant Fifth Amendment concerns, which likely can only be fully evaluated based on what discovery Garland seeks.

PLAINTIFF'S OPENING BRIEF RE: DISCOVERY AND STANDARD OF REVIEW

Case No.: 22-cv-09076-JCS

attempted purchase. The police report that Garland relies on as a basis to now seek discovery is not among the types of documents this Court may consider in determining whether Brinson's conviction triggers a federal prohibition, nor would any potential evidence that Garland seeks to obtain in discovery. *Shepard*, 544 U.S. 13. As further noted in this Court's July 7, 2023, order denying Garland's motion to dismiss, the reports on which Garland now relies on are inadmissible hearsay under rule 801 of the Federal Rules of Evidence. Order Re Def. Garland's Mot. to Dismiss 7. This Court also declined to incorporate by reference or judicially notice that same report, in part because the cases on which Defendant Garland relied on all involved "**undisputed** facts" that were part of those documents that a court may consider. *Id*.

As stated in section 925A of Title 18 of the United States Code, "[a]ny person denied a firearm ... who was not prohibited from receipt of a firearm pursuant to subsection (g) or (n) of section 922, may bring an action against the United States ... for an order directing ... the transfer be approved." Because Brinson's relationship has been established as a "dating relationship" in the state court record for the 1997 conviction, that conviction cannot constitute a misdemeanor crime of domestic violence within the meaning of 18 U.S.C. § 922(g)(9). As there can be no genuine dispute to this fact, Brinson is entitled to summary judgment as a matter of law.

## CONCLUSION

Existing Supreme Court and Ninth Circuit precedents prohibit this Court from considering anything other than "the statute of conviction, charging document, plea agreement, plea transcript, and any explicit factual finding by the trial judge" to determine whether Brinson's 1997 conviction triggers a federal firearm prohibition under 18 U.S.C. § 922(g)(9). Because those documents and facts establish that the domestic relationship was a "dating relationship," and not some other sort of domestic relationship, the federal firearm prohibition does not apply to Brinson, and Garland is barred by res judicata and collateral estoppel from relitigating the issue.

/ / /

/ / /

/ / /

PLAINTIFF'S OPENING BRIEF RE: DISCOVERY AND STANDARD OF REVIEW
Case No.: 22-cv-09076-JCS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    For these reasons, Brinson requests that this Court issue an order denying Garland's request for

discovery and issue summary judgment for Brinson.

Dated: April 3, 2024                                    **MICHEL & ASSOCIATES, P.C.**


                                                        *s/ Matthew D. Cubeiro*
                                                        Matthew D. Cubeiro
                                                        Counsel for Plaintiff

PLAINTIFF'S OPENING BRIEF RE: DISCOVERY AND STANDARD OF REVIEW

**CERTIFICATE OF SERVICE**
IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Case Name: *Brinson v. Merrick, et al.*
Case No.: 22-cv-09076-JCS

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

I am not a party to the above-entitled action. I have caused service of:

**PLAINTIFF'S OPENING BRIEF RE: DISCOVERY AND STANDARD OF REVIEW**

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Jerry T. Yen
Deputy Attorney General
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 210-7836
Fax: (916) 324-8835
E-mail: Jerry.Yen@doj.ca.gov
    *Attorneys for Rob Bonta*


Michael A. Keough
Assistant United States Attorney
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-7234
E-mail: michael.keough@usdoj.gov
    *Attorneys for Defendant Merrick B. Garland*


I declare under penalty of perjury that the foregoing is true and correct.

Executed April 3, 2024.

Laura Palmerin