PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
MICHAEL A. KEOUGH (NYRN 5199666)
Assistant United States Attorney

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3721
FAX: (510) 637-3724
michael.keough@usdoj.gov

*Attorneys for Defendant*
*Pamela Bondi*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BRAD D. BRINSON, an individual, | Case No. 3:22-CV-09076-JSC |
| Plaintiff, | **DEFENDANT PAMELA BONDI'S** |
| v. | **MOTION FOR SUMMARY JUDGMENT** |
| PAMELA BONDI, | Hrg Date:  May 1, 2025 |
| Defendant. | Time:      10:00 a.m. |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on May 1, 2025 at 10:00 a.m., or as soon thereafter as this matter may be heard by the Honorable Jacqueline Scott Corley, United States District Judge of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, Courtroom 8 – 19th Floor, San Francisco, California, Defendant Pamela Bondi ("Defendant") will and hereby does move the Court for an order of summary judgment in favor of Defendant under Federal Rule of Civil Procedure 56.

**RELIEF SOUGHT**

Defendant seeks an order granting summary judgment in its favor.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether Defendant is entitled to summary judgment because there is no dispute of material fact that Plaintiff is ineligible to purchase a firearm under 18 U.S.C. § 922(g)(9).

**II.    INTRODUCTION**

Plaintiff contends that his 1997 domestic violence conviction should not have precluded him from purchasing a firearm.  Under 18 U.S.C. § 922(g)(9), such a conviction can preclude future firearm ownership where the victim was a person "similarly situated to a spouse," such as a girlfriend with whom the convicted individual previously lived with.  The Court has already rejected Plaintiff's argument that the determination his firearms transfer should have been decided only on facts determined during the 1997 conviction.  *Brinson v. Garland*, No. 22-CV-09076-JSC, 2024 WL 2730455 (N.D. Cal. May 28, 2024).

Now, all evidence collected in discovery in this action – including testimony, documents, and interrogatory responses – supports a determination that Plaintiff and the victim of his 1997 offense (L.W.) lived together as boyfriend and girlfriend for approximately one year, prior to the incident, that gave rise to the 1997 conviction.  As a result, Plaintiff cannot prevail on his claim challenging the denial of his firearm purchase because the purchase was properly denied pursuant to 18 U.S.C. § 922(g)(9).

Additionally, while the affirmative testimony and evidence produced in discovery is sufficient to grant the present motion, the Court should draw an adverse inference in Defendant's favor that Plaintiff

1  lived with L.W. prior to the 1997 offense based on Plaintiff's invocation of the Fifth Amendment in

2  response to deposition questions on this topic.

3  **III.    FACTUAL AND PROCEDURAL BACKGROUND**

4         Plaintiff Brad Brinson had a romantic relationship with L.W. beginning in the fall of 1994 or the

5  spring of 1995 that lasted until 1997.  *See* Keough Decl., Ex. A (L.W. Deposition Excerpts) at 44:6-22.

6  When asked to confirm that he did in fact have a romantic relationship with L.W., Plaintiff invoked the

7  Fifth Amendment and declined to answer.  *See* Keough Decl., Ex. B (Plaintiff Deposition Excerpts) at

8  31:8-23.

9         For approximately one year from 1996 to 1997, L.W. and Plaintiff lived together at 715

10  Trinkling Creek Drive in Felton, California.  *See* Dkt. 60-1 (declaration dated December 19, 2023);

11  Keough Decl., Ex. A at 88 (L.W. deposition excerpt confirming accuracy of declaration previously filed

12  as Dkt. 60-1).  L.W.'s daughters Cypress and Haille also lived at this address.  *See* Dkt. 60-1.  L.W.

13  described their relationship as serious, noting that "when I moved to Trinkling Creek, that was a pretty

14  committed decision I made, to move there with him with my kids."  Keough Decl., Ex. A, at 44:23-45:5.

15  In response to interrogatories, Plaintiff confirmed that "In 1996, Plaintiff lived in Felton, CA at 715

16  Trinkling Creek Drive."  *See* Keough Decl., Ex. C, Plaintiff's Response to Interrogatory No. 1.  Plaintiff

17  also confirmed that he paid the utility bills at 715 Trinkling Creek Drive during the time he lived there.

18  *See id*, Plaintiff's Response to Interrogatory No. 11.

19         The documentary evidence produced in this action also confirms that Plaintiff and L.W. lived

20  together.  L.W. located and produced a copy of a school report card envelope addressed "To the Parents

21  of Cypress Wachholz, 715 Trinkling Creek, Felton, CA 95018."  *See* Keough Decl., Ex. D, *see also*

22  Keough Decl., Ex. A at 85:22-86:6 (L.W. testimony authenticating the envelope).  L.W. also provided a

23  medical record dated February 9, 1996 listing her address as 715 Trinkling Creek Drive in Felton,

24  California.  *See* Keough Decl., Ex. E, *see also* Keough Decl., Ex. A at 86:7-13 (L.W. testimony

25  authenticating the medical record).

26         When the cohabitation ended in 1997, L.W. moved to 800 24th Avenue in Santa Cruz,

27  California.  Keough Decl., Ex. A at 62:5-7, 90:17-25.  On June 10, 1997, a domestic violence incident

28  took place at this address involving Plaintiff and L.W.  A sworn probable cause statement prepared by

1 Santa Cruz Sheriff's Deputy J. Marsh and submitted as part of the record of the 1997 proceeding

2 (containing a restatement of what L.W. and her daughters experienced) states that Plaintiff "came to

3 victim's home and entered through an unlocked back door and confronted victim" while armed with a

4 "buck knife," then "punched victim in head with closed fist then grabbed victim by the throat with both

5 hands" until L.W. "began to lose consciousness." Keough Decl., Ex. F. When asked a series of

6 questions regarding whether the sworn probable cause statement describing this incident was accurate,

7 Plaintiff invoked the Fifth Amendment and refused to answer each question of the series. *See* Keough

8 Decl., Ex. B at 35:7-38:16 (Plaintiff deposition excerpts). The sworn probable cause statement also

9 states that "Brinson and Victim previously lived together as boyfriend and girlfriend." Keough Decl.,

10 Ex. F.[1]

11          On August 21, 1997, Plaintiff was convicted of violating California Penal Code § 243(e).

12 Keough Decl., Ex. G (judicial order entering conviction). Violations of Section 243(e) include battery

13 "committed against a spouse, a person with whom the defendant is cohabiting, a person who is the

14 parent of the defendant's child, former spouse, fiancé, or fiancée, or a person with whom the defendant

15 currently has, or has previously had, a dating or engagement relationship."

16          The parties do not dispute that, in 2018, Plaintiff attempted to purchase a firearm but was denied.

17 Plaintiff then filed this action against the Attorney General of the United States under 18 U.S.C. § 925A

18 seeking "an order directing . . . that the transfer be approved." *See* 18 U.S.C. § 925A; *see also* Dkt. 1

19 (Complaint). In addition to the claim arising under 18 U.S.C. § 925A, the Complaint also contained

20 claims under the Second Amendment and 42 U.S.C. § 1983. *See* Dkt. 1. After the Court granted

21 Defendant's motion to dismiss on the Section 1983 claim only, *see* Dkt. 36, the parties conducted

22 discovery "on whether Plaintiff was similarly situated to a spouse of the victim of his 1997 battery." *See*

23 Dkt. 63.

24 **IV.    LEGAL STANDARD**

25          Summary judgment is appropriate if the record shows "that there is no genuine issue as to any

26

27          [1] This sworn probable cause statement may be considered as evidence at the summary judgment
stage because it is admissible under Federal Rule of Evidence 803(16). *See* Fed. R. Evid. 803(16)

28 (hearsay rule does not apply to "[a] statement in a document that was prepared before January 1, 1998,
and whose authenticity is established.").

material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); Fed. R. Civ. P. 56(c).  A court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party.  *Anderson*, 477 U.S. at 248; *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  A dispute is material only if it could affect the outcome of the suit.  *Rivera*, 395 F.3d at 1146.  Summary judgment is appropriate if a rational trier of fact, viewing the record as a whole, could not find in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## V.    ARGUMENT

### A.    Defendant is Entitled to Summary Judgment Because Plaintiff is Ineligible to Lawfully Purchase a Firearm

Defendant is entitled to summary judgment on the remaining counts of the Complaint because Plaintiff has failed to prove that he is lawfully entitled to purchase a firearm.[2]  Section 925A of Title 18 of the United States Code allows "any person denied a firearm . . . who was not prohibited from receipt of a firearm pursuant to subsection (g) or (n) of section 922" to bring an action "for an order directing . . . that the transfer be approved."  *See* 18 U.S.C. § 925A.  Section 922(g) of Title 18 of the United States Code prohibits the receipt of firearms by several categories of people, including anyone "who has been convicted in any court of a misdemeanor crime of domestic violence."  18 U.S.C. § 922(g)(9).  At the time of Plaintiff's 2018 denial, Section 922 utilized the definition "misdemeanor crime of domestic violence" found at 18 U.S.C. § 921(a)(33)(A)(ii), as follows:

> An offense that— (i) is a misdemeanor under Federal, State, Tribal, or local law; and (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with

---

[2] With regards to Plaintiff's remaining claim under the Second Amendment, Plaintiff has previously represented that he is not challenging the constitutionality of 18 U.S.C. § 922(g)(9). Therefore, should the Court determine that Plaintiff is ineligible to possess a firearm for purposes of the 18 U.S.C. § 925A claim, the separate Second Amendment claim must also be resolved in Defendant's favor.

or has cohabitated with the victim as a spouse, parent, or guardian, or by a
person similarly situated to a spouse, parent, or guardian of the victim.

*See* 18 U.S.C. § 921(a)(33)(A)(ii).[3]  Accordingly, three elements must be met for Plaintiff's 1997

conviction to disqualify him from receiving a firearm:  (1) the crime is a misdemeanor under federal,

state, or tribal law, (2) the crime has, as an element, the use or attempted use of physical force, or the

threatened use of a deadly weapon, and (3) the crime was committed by someone in a specified

relationship with the victim.  *Id.*; *see also United States v. Hayes*, 555 U.S. 415, 418 (2009) (noting that

the specific type of relationship does not itself need to be established as an element of the underlying

misdemeanor offense).  Plaintiff has not previously disputed that California Penal Code § 243(e) is a

misdemeanor under state law, or that Section 243(e) has as an element the use or attempted use of

physical force.  *See* Cal. Penal Code § 242 (defining "battery" as "any willful and unlawful use of force

or violence upon the person of another").

The remaining claims in the Complaint thus turn on one question: whether Plaintiff was in one of

the specified relationships with the victim, as required by the final element of the definition of

"misdemeanor crime of domestic violence" in Section 922(g)(9).  *See Brinson*, 2024 WL 2730455 at *6

("That Plaintiff and the victim had lived together is sufficient to support an inference they were similarly

situated to spouses.").

All of the evidence collected in discovery demonstrates that Plaintiff and L.W. had a romantic

relationship and that they lived together at 715 Trinkling Creek Drive in Felton, California, for

approximately one year prior to the 1997 conviction:

- Plaintiff's interrogatory responses (Keough Decl., Ex. C), conceding that Plaintiff lived at

  715 Trinkling Creek Drive in 1996 and that he paid the utility bills there himself.

- L.W.'s sworn declaration (Dkt. 60-1), indicating that L.W. and Plaintiff lived together at 715

  Trinkling Creek Drive in Felton, California for approximately one year from 1996 to 1997,

---

[3] While Section 921(a)(33)(A)(ii) was amended in 2022 to expressly enumerate "dating
relationship[s]" generally as part of the definition of "misdemeanor crime of domestic violence," this
amendment did not apply retroactively.  *See* Bipartisan Safer Communities Act (BCSA), Pub. Law 117-
159, June 25, 2022, 136 Stat 1313, at § 12005(b).  The BCSA amendment did not mean that no "daring
relationships' were encompassed by the pre-BSCA definition provided as Section 921(a)(33).  The
analysis thus turns on whether Plaintiff was "similarly situated to a spouse" when he lived with L.W. as
boyfriend and girlfriend.

and that her daughters Cypress and Haille lived there as well.

- L.W.'s deposition testimony (Keough Decl., Ex. A), testifying that she had a romantic relationship with Plaintiff from 1994 or 1995 to 1997, lived at 715 Trinkling Creek Drive in Felton, California with him, and confirming the accuracy of her prior declaration.

- A copy of a school report card envelope addressed "To the Parents of Cypress Wachholz, 715 Trinkling Creek, Felton, CA 95018" (*Id.* at Ex. D)  .

- A medical record dated February 9, 1996, listing L.W.'s address as 715 Trinkling Creek Drive in Felton, California (*Id.* at Ex. E).

- A sworn probable cause statement from the 1997 proceeding stating that "Brinson and Victim previously lived together as boyfriend and girlfriend" (*Id.* at Ex. F).

Plaintiff thus is ineligible to receive a firearm because he was someone "similarly situated to a spouse" when he lived with L.W. while having a romantic relationship with her.  *See* 18 U.S.C. § 921(a)(33)(A)(ii).  At least five circuits have addressed the question of whether cohabitants in romantic relationships are considered "person[s] similarly situated to a spouse" – the First, Fifth, Eighth, Eleventh, and Federal Circuits – and each has held in the affirmative.  *See Buster v. United States*, 447 F.3d 1130, 1133 (8th Cir. 2006) ("We agree with the First and Fifth Circuits and hold abuse perpetrated on a live-in girlfriend is domestic abuse committed 'by a person similarly situated to a spouse' for purposes of sections 922(g)(9) and 921(a)(33)(A)(ii)."); *United States v. Costigan*, No. CRIM. 00-9-B-H, 2000 WL 898455, at *3 (D. Me. June 16, 2000), *aff'd* 18 F. App'x 2 (1st Cir. 2001) ("Congress was reaching broadly and was not limiting the prohibition to domestic violence occurring in legal or common law marriages . . . I conclude, therefore, that Congress intended to reach domestic relationships of all sorts–legal, common law or otherwise."); *United States v. Shelton*, 325 F.3d 553, 563 (5th Cir. 2003) ("live-in girlfriend" of two months was similarly situated to a spouse); *United States v. White*, 593 F.3d 1199, 1204 (11th Cir. 2010) ("The victim was in a specified domestic relationship with White: she lived with him, was his girlfriend, and the dispute was a domestic one.") (internal quotations omitted); *White v. Dep't of Justice*, 328 F.3d 1361, 1369 (Fed. Cir. 2003) (holding defendant was "a person similarly situated to a spouse" under Section 921(a)(33)(A)(ii) where defendant and victim cohabited as boyfriend and girlfriend continuously for almost a year and intermittently for several months).  In so

deciding, these courts looked to cohabitation relationships of a similar length to that of Plaintiff and

L.W. – or even shorter – and determined that these relationships were covered by the final clause of

Section 921(a)(33)(A)(ii) as a person "similarly situated" to a spouse, parent, or guardian of the victim.

*See White*, 328 F.3d at 1369 (one-year cohabitation); *Shelton*, 325 F.3d at 563 (two-month cohabitation).

Courts have also considered whether prior romantic cohabitants are persons "similarly situated to a

spouse" and cited approvingly the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF)'s long-

standing interpretation that Section 922(g)(9) applies to both current and former cohabitants.[4]  *Woods v.

City & Cnty. of Denver*, 62 F. App'x 286, 287–88 (10th Cir. 2003) (citing 1998 ATF advisory opinion

interpreting "similarly situated to a spouse" to apply to "anyone who was domiciled in an intimate

relationship with the victim of the offense either at the time of, or at any time prior to the offense.");

*United States v. Lewitzke*, 176 F.3d 1022, 1025 (7th Cir. 1999) (citing same 1998 ATF advisory opinion

approvingly); *see also Brinson*, 2024 WL 2730455 at *6 (citing *Woods* and observing "[t]hat Plaintiff

and the victim had lived together is sufficient to support an inference they were similarly situated to

spouses.").

Plaintiff's prior romantic live-in relationship with the victim of his 1997 offense is thus covered

by Section 922(g)(9) and summary judgment should be granted in Defendant's favor.

**B.    An Adverse Inference is Appropriate Based on Plaintiff's Invocation of the Fifth Amendment During Discovery**

The affirmative evidence indicating that Plaintiff lived with L.W. is sufficient to grant summary

judgment in Defendant's favor.  But the Court should also draw an adverse inference from Plaintiff's

invocation of the Fifth Amendment in response to the following questions at his deposition (*see* Keough

Decl., Ex. B, Plaintiff deposition excerpts) and infer that Plaintiff was in a romantic relationship with

---

[4] Whether the 1997 court made a factual determination regarding the cohabitation is irrelevant. In the first instance, former cohabitants are not an enumerated category of relationship under the California statute, so there was no reason for state prosecutors to allege this specific relationship during the 1997 proceeding.  But the specific relationship need not be an element of the underlying misdemeanor for Section 922(g)(9) to apply.  *See Hayes*, 555 U.S. at 418; *see also Brinson*, 2024 WL 2730455 at *5 (previously rejecting Plaintiff contention that the present inquiry was limited to facts determined during the 1997 conviction); *Decker v. Fed. Bureau of Investigation*, No. 2:24-CV-09039-HDV-JDE, 2024 WL 5319140, at *5 (C.D. Cal. Dec. 17, 2024), report and recommendation adopted, No. 2:24-CV-09039-HDV-JDE, 2025 WL 71723 (C.D. Cal. Jan. 8, 2025) (FBI could consider evidence outside of the conviction record to establish whether plaintiff was "in a dating relationship and living with the victim" and thus ineligible to possess a firearm under Section 922(g)(9)).

L.W. and lived with her at 715 Trinkling Creek Drive:

    1.   "Do you agree with me that [L.W.] lived with you for approximately one year at 715 [Trinkling Creek Drive in] Felton, California?" (Plaintiff deposition at 27:19-28:1)

    2.   "Do you also agree with me that [L.W.'s] daughters, Cypress and Haley, lived with you at this house on 715 Trinkling Creek Drive during 1996?" (Plaintiff deposition at 28:2-10)

    3.   "Mr. Brinson, do you agree with [me] that during the time that [L.W.] and her daughters lived with you at 715 Trinkling Creek Drive in Felton California, and Haley was about 11 years old and Cypress was about 6 years old?" (Plaintiff deposition at 28:11-21)

    4.   "Do you agree that you were at one time in a romantic relationship with [L.W.]?" (Plaintiff deposition at 31:8-15)

    5.   "Mr. Brinson, do you agree that you were in a relationship with [L.W.] in 1996?" (Plaintiff deposition at 31:16-23)

A party in a civil case may invoke their Fifth Amendment right to remain silent, both during and before trial, "but the court is equally free to draw adverse inferences from their failure of proof." *S.E.C. v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998); *see also United States v. Solano-Godines*, 120 F.3d 957, 962 (9th Cir. 1997) ("In civil proceedings, however, the Fifth Amendment does not forbid fact finders from drawing adverse inferences against a party who refuses to testify."). As the Supreme Court has observed, "silence in the face of accusation is a relevant fact not barred from evidence." *Baxter v. Palmigiano*, 425 U.S. 308, 319 (1976). Here, Plaintiff invoked the Fifth Amendment in response to questions that (1) would have confirmed that Plaintiff and L.W. were in a romantic relationship prior to the incident leading to Plaintiff's 1997 conviction, (2) would have confirmed that Plaintiff and L.W. lived together at 715 Trinkling Creek Drive in Felton, California for approximately one year during this time, and (3) would have corroborated L.W.'s own testimony on these questions. The inference is that the truthful answer to each of the above questions posed to Plaintiff would have been "yes."[5]

---

[5] Additional inferences would also be appropriate for questions related to the facts of the 1997 incident where Plaintiff also invoked the Fifth Amendment and declined to answer. *See* Keough Decl., Ex. B at 35:7-38:16.

1     Accordingly, the Court should draw an adverse inference in Defendant's favor based on the

2   invocation of the Fifth Amendment in response to the five questions listed above.[6]

3   **VI.     CONCLUSION**

4     For the foregoing reasons, the Court should grant summary judgment in Defendant's favor.

5   DATED:     March 26, 2025

6                                    Respectfully submitted,

7                                    PATRICK D. ROBBINS

8                                    Acting United States Attorney

9                                    */s/ Michael A. Keough*
                                     MICHAEL A. KEOUGH
10                                   Assistant United States Attorney

11                                   *Attorneys for Defendant*

12

13

14

15

16

17

18

19

20

21

22

23

24

25     [6] The Supreme Court and Ninth Circuit have previously held that judgment cannot be based on a

26   Fifth Amendment adverse inference standing alone.  *See Colello,* 139 F.3d at 678 ("*Lefkowitz* and
    *Baxter* require that there be evidence in addition to the adverse inference to support a court's ruling.

27   Thus, whether the district court committed reversible error turns on whether the SEC presented
    additional evidence against Colello.").  This issue is not present here, however, as all the evidence

28   collected in discovery is consistent with the adverse inference that should be drawn, namely that
    Plaintiff lived with L.W. as a romantic partner.