UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAD DANIEL BRINSON,<br><br>  Plaintiff,<br><br> v.<br><br>PAMELA BONDI, in her capacity as Attorney General of the United States,<br><br>  Defendant. | Case No. 22-cv-09076-JSC<br><br>**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 77 |

Brad Daniel Brinson sues the United States Attorney General Pamela Bondi[1] for erroneous denial of a firearm after the California Department of Justice barred him from purchasing a firearm on the grounds he had been convicted of a misdemeanor crime of domestic violence. (Dkt. No. 1 ¶¶ 46-65.)[2]  Now pending before the Court is Defendant's motion for summary judgment.  Defendant argues that under 18 U.S.C. § 922(g), Mr. Brinson is legally ineligible to purchase a firearm.  (Dkt. No. 77.)  After careful consideration of the briefing, and having had the benefit of oral argument on May 1, 2025, the Court GRANTS Defendant's motion for summary judgment.  On the summary judgment record it is undisputed Mr. Brinson was similarly situated to a spouse of his domestic violence victim; so, he is ineligible to purchase a firearm.

**BACKGROUND**

**I. Factual Background**

In 1997, Mr. Brinson pled *nolo contendere* to one count of violating California Penal Code

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Pamela Bondi, the current Attorney General is automatically substituted for Merrick B. Garland.
[2] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

§ 243(e), for battery against L.W., a person with whom he was previously in a dating relationship. (*See* Dkt. Nos. 78-2 at 2; 79-1 at 88-92.)  In the probable cause declaration supporting Mr. Brinson's arrest, the Santa Cruz County Officer stated, "[Mr.] Brinson and victim previously lived together as boyfriend + girlfriend." (Dkt. No. 78-1.)[3] And the criminal complaint against Mr. Brinson stated he and L.W. had a dating relationship. (Dkt. No. 79-1 at 63.)

On April 15, 2013, the California Department of Justice ("California DOJ") formally notified Mr. Brinson he was "ineligible to either possess or purchase firearms," after he had attempted to purchase a firearm. (Dkt. No. 79-1 at 86.)  Mr. Brinson then corresponded with both the California DOJ and the FBI.  At Mr. Brinson's request for correction, Deputy Attorney General Granger informed him his ineligibility was based on his 1997 conviction, which was a qualifying misdemeanor crime of domestic violence "based on the information in the police report that Mr. Brinson and the victim lived together for one year prior to the incident." (Dkt. No. 79-1 at 72.)  Soon after Deputy Attorney General Granger's determination, Assistant General Counsel Finch, representing the FBI, found Mr. Brinson was "not federally prohibited." (*Id.* at 88.)  In an email to Mr. Brinson's counsel, he determined:

> [Mr. Brinson's] conviction included the fact of his relationship with the victim.  That is, his relationship to the victim, as a matter of law and fact is and was a dating relationship.  That relationship, as defined by California law, does not qualify the conviction as a misdemeanor crime of domestic violence under 18 USC 922(g)(9) and 921(a)(33), the police report notwithstanding.

(*Id.*)  Mr. Brinson's counsel forwarded this email to Deputy Attorney General Granger. (*Id.* at 8-10.)  In 2014, after contacting the federal attorneys to confirm the federal government's understanding of the firearms possession bar, Deputy Attorney General Granger determined "[a]s this is a federal prohibition issue, and the NICS[4] attorneys have decided that your client is not prohibited, [the California] DOJ has made a notation of this fact on Mr. Brinson's record and

---

[3] Mr. Brinson objects to this exhibit under Federal Rule of Evidence 801 insofar as itis used for its truth. (Dkt. No. 79 at 12.)  Defendant counters the exhibit is admissible under the ancient documents exception to the hearsay rule under Federal Rule of Evidence 803(16). (Dkt. No. 77 at 4 n.1.)  The Court rules on the evidentiary objection *infra*, though here, the exhibit is cited only to show the arresting officer's basis for effectuating Mr. Brinson's arrest, not to conclude as a matter of law that Mr. Brinson and L.W. lived together or were in a dating relationship.
[4] The National Instant Criminal Background Check System Section of the FBI.

barring any other prohibiting offense/circumstance, he may reapply for a gun purchase." (*Id.* at 6.)

In 2018, despite having obtained California DOJ approval for firearm purchase applications in the preceding years, the California DOJ again denied Mr. Brinson permission. (*Id.* at 5.) Mr. Brinson's attorney then forwarded his 2014 communications with Deputy Attorney General Granger. (*Id.*) The California DOJ contacted the NICS requesting information about Mr. Brinson's case, after which an NICS representative replied, "I have reviewed the attached documents. This does establish a qualified relationship for 922(g)(9)." (*Id.* at 94.)

Mr. Brinson appealed to the FBI's Voluntary Appeal File Unit ("VAF"), but it determined Mr. Brinson "is not eligible to be entered into the VAF" because he had been convicted of a qualifying misdemeanor crime of domestic violence. (*Id.* at 14-15.)

## II.     Procedural History

Plaintiff filed suit in 2022 against the United States Attorney General and the state of California for erroneous denial of a firearm under 18 U.S.C. § 925A; violation of his Second Amendment rights; and violation of his equal protection rights under the Fourteenth Amendment. (Dkt. No. 1 ¶¶ 46-65.) In 2023, California moved to dismiss the claims against it, though the Court held the motion in abeyance to allow the parties time to meet and confer. (Dkt. No. 25.) Soon after, the United States Attorney General moved to dismiss and its motion was denied in part and granted in part. (Dkt. No. 36.) After ruling on the United States Attorney General's motion, the Court granted California's motion. (Dkt. No. 40.) In August 2024, Mr. Brinson voluntarily dismissed his claims against Defendants Rob Bonta and the California Department of Justice. (Dkt. No. 68.) So, the remaining claims are a § 925A and Second Amendment claim against the United States Attorney General. Both claims are predicated on Mr. Brinson's insistence his conviction does not disqualify him from purchasing a firearm.

In 2024, the Court ordered the parties to brief whether, in an action under 18 U.S.C. § 925A, the government is permitted to supplement the administrative record by conducting discovery to support its determination a person is prohibited from possessing a firearm. (Dkt. No. 56.) Subsequently, the Court held the government "may conduct discovery on whether Plaintiff was similarly situated to a spouse of the victim of his 1997 battery," to prove he was convicted of

a misdemeanor crime of domestic violence as defined by 18 U.S.C. §§ 922(g)(9) and 921(a)(33)(A). (Dkt. No. 63 at 1.)

In the same Order, because Mr. Brinson moved for summary judgment on whether his 1997 conviction qualified as a misdemeanor crime of domestic violence (Dkt. No. 59 at 17), the Court held there existed "a genuine issue of material fact [] as to whether Plaintiff was 'similarly situated to a spouse' of his 1997 battery victim." (Dkt. No. 63 at 10.) The Court further held, "[t]hat Plaintiff and the victim had lived together is sufficient to support an inference they were similarly situated to spouses." (*Id.* at 10 (citing *Buster v. United States*, 447 F.3d 1130, 1133 (8th Cir. 2006) ("We agree with the First and Fifth Circuits and hold abuse perpetrated on a live-in girlfriend is domestic abuse committed "by a person similarly situated to a spouse" for purposes of sections 922(g)(9) and 921(a)(33)(A)(ii)."); *Woods v. City & Cnty. of Denver*, 62 F. App'x 286, 287-88 (10th Cir. 2003) (noting "the Bureau of Alcohol, Tobacco, and Firearms' (BATF) October 1998 advisory opinion interpret[ed] the phrase 'similarly situated to a spouse' to apply to 'anyone who was domiciled in an intimate relationship with the victim of the offense either at the time of, or at any time prior to the offense.'").) And "[t]he relevant questions under § 925A are whether the information preventing Plaintiff's firearm transfer is erroneous or whether he is not disqualified from receipt of a firearm—not whether the government's decision was adequately justified at the time pursuant to the Federal Rules of Evidence." (*Id.* at 10-11.)

Defendant now moves for summary judgment on the grounds there is no dispute of material fact that 18 U.S.C § 922(g)(9) makes Mr. Brinson ineligible to purchase a firearm. (Dkt. No. 77.)

**ANALYSIS**

**I.     Whether Mr. Brinson is Ineligible to Lawfully Purchase a Firearm**

Section 922(g)(9) bars a person "who has been convicted in any court of a misdemeanor crime of domestic violence" from possessing "any firearm or ammunition." 18 U.S.C. § 922(g)(9). At the time of Mr. Brinson's conviction, a "misdemeanor crime of domestic violence"

    (i) is a misdemeanor under Federal, State, Tribal, or local law; and

    (ii) has, as an element, the use or attempted use of physical force, or

the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, **by a person similarly situated to a spouse**, parent, or guardian of the victim, or by a person who has a current or recent former dating relationship with the victim.

*Id.* § 921(a)(33)(A) (emphasis added).[5] The definition of "misdemeanor crime of domestic violence" in § 922(g)(9) "imposes two requirements: First, a 'misdemeanor crime of domestic violence' must have, 'as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon.' Second, it must be 'committed by' a person who has a specified domestic relationship with the victim." *United States v. Hayes*, 555 U.S. 415, 421 (2009). It is undisputed the first requirement is met.

Defendant moves for summary judgment on the grounds the second requirement is also met as a matter of law. In particular, Defendant argues it is undisputed Mr. Brinson lived with L.W. prior to the 1997 domestic violence incident, and that at the time they were living together, they were in a romantic relationship. So, argues Defendant, as a matter of law Mr. Brinson was a person "similarly situated to a spouse" of his victim and so he cannot meet his burden under 18 U.S.C. § 925A of showing Defendant erroneously denied him permission to possess a firearm.

### A. There is No Genuine Dispute of Fact as to Romantic Cohabitation

There is no genuine dispute Mr. Brinson and L.W. romantically cohabitated prior to the domestic violence incident.[6]

- L.W. repeatedly testified she lived at 715 Trinkling Creek Drive *with* Mr. Brinson and her two daughters and had a long-term relationship with him. (Dkt. Nos. 60-1 ("For about one

---

[5] Before June 2022, the federal definition of "misdemeanor crime of domestic violence" pertinent to the lawful possession and acquisition of firearms did not cover dating relationships. *See* Pub. L. 117–159, § 12005(a) (June 25, 2022), 136 Stat. 1313; *see id.* § 12005(b) ("The amendments made by subsection (a) shall not apply to any conviction of a misdemeanor crime of domestic violence entered before the date of enactment of this Act.").

[6] Mr. Brinson also argues the Court should decide this motion "based on the information available at the time" of the denial in 2018, citing two cases regarding the constitutionality of warrants. (Dkt. No. 79 at 11 (citing *Steagald v. United States*, 451 U.S. 204, 213 (1981); *United States v. Gust*, 405 F.3d 797, 800-801 (9th Cir. 2005)).) He cites no authority requiring the Court only consider the documents the agency considered in making its determination in the context of Section 922(g)(9). And the Court previously rejected this argument, ruling, "courts have allowed for discovery outside the original administrative or criminal proceeding record in § 925A actions." (Dkt. No. 63 at 3-4 (collecting cases).)

year from 1996 to 1997, … Brad Brinson was my boyfriend and we lived together in a house located at 715 Trinkling Creek Drive in Felton.  [] My daughters … lived with us at this house as well."); 77-2 at 4-10 (attesting she lived at Trinkling Creek Drive with Mr. Brinson, which was "a pretty committed decision."); 79-1 at 48:18-22 (testifying the relationship lasted "like three and a half" years); 79-1 at 49 (testifying she lived at Trinkling Creek Drive from before 1996).)

- A 1996 L.W. medical record corroborates she lived at 715 Trinkling Creek Drive. (Dkt. No. 77-6.)
- Mr. Brinson attests he "lived at 715 Trinkling Creek Drive in Felton, California, in 1996," although he did not recall the exact months he lived there.  (Dkt. No. 77-4 at 5.)
- The probable cause report states Mr. Brinson and L.W. "lived together as boyfriend + girlfriend."  (Dkt. No. 78-1 at 2.)

Taken together, these facts compel the finding that prior to the 1997 offense, Mr. Brinson and L.W. cohabitated.  And, given L.W.'s testimony and Mr. Brinson's admission the parties were at least in a dating relationship during this period (Dkt. No. 79 at 9-10), the record also compels a finding that Mr. Brinson and L.W. lived together while in a romantic relationship.  "That Plaintiff and the victim had lived together is sufficient to support an inference they were similarly situated to spouses." (Dkt. No. 63 at 10 (citing *Buster*, 447 F.3d at 1133 ("We agree with the First and Fifth Circuits and hold abuse perpetrated on a live-in girlfriend is domestic abuse committed "by a person similarly situated to a spouse" for purposes of sections 922(g)(9) and 921(a)(33)(A)(ii)."); *Woods*, 62 F. App'x at 287-88 (noting "the Bureau of Alcohol, Tobacco, and Firearms' (BATF) October 1998 advisory opinion interpret[ed] the phrase 'similarly situated to a spouse' to apply to 'anyone who was domiciled in an intimate relationship with the victim of the offense either at the time of, or at any time prior to the offense.'").)  The burden thus shifts to Mr. Brinson to identify evidence that creates a genuine dispute of fact as to whether he romantically cohabitated with L.W.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000) ("If . . . a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense.").

Mr. Brinson does not identify any evidence that supports a finding by a reasonable trier of fact that he and L.W. did not cohabitate as boyfriend and girlfriend. *See Edwards v. Thermigen LLC*, No. 21-CV-01828-JSC, 2024 WL 3640482, at *1 (N.D. Cal. July 30, 2024) ("To survive, Plaintiff must establish a genuine issue of material fact for trial through probative evidence.") (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). For example, he does not attest they never lived together as boyfriend and girlfriend prior to his 1997 conviction. To the contrary, at his deposition he repeatedly invoked the Fifth Amendment in response to questions regarding whether he lived with L.W. and whether he was in a romantic relationship with her. (Dkt. No. 77-3 at 6-8.)

Mr. Brinson's attempt to create a genuine dispute by attacking Defendant's evidence is unsuccessful. Mr. Brinson's insistence that L.W. is unreliable because she cannot remember the exact dates when she lived at Trinkling Creek Drive does not create a genuine dispute as to whether she lived at Trinkling Creek Drive with Mr. Brinson prior to 1997 and was in a romantic relationship with him. Drawing all reasonable inferences in Mr. Brinson's favor, this testimony does not contradict that Mr. Brinson and L.W. lived together prior to the incident while they were in a romantic relationship.

His attack on the probable cause statement that Mr. Brinson and L.W. lived together is similarly unavailing. First, even if the statement is excluded, Defendant has still established Mr. Brinson lived with L.W. while in a romantic relationship through L.W.'s testimony alone. Second, the probable cause declaration is admissible under the ancient documents exception to the hearsay rule because it contains "[a] statement in a document that was prepared before January 1, 1998, and whose authenticity is established." Fed. R. Evid. 803(16); *see also Chemehuevi Indian Tribe v. McMahon*, 934 F.3d 1076, 1081 (9th Cir. 2019) (holding a report "is plainly admissible as an ancient document, Fed. R. Evid. 803(16), which may contain multiple levels of hearsay.") (citing 30B Charles Alan Wright & Jeffrey Bellin, *Federal Practice & Procedure* § 6935 (2018 ed.) ("[E]xclusion of statements in qualifying ancient documents on the grounds that the author lacked firsthand knowledge, or (relatedly) that the document contains hearsay-within-hearsay should be rare.")).

7

1    Mr. Brinson's challenge to the February 9, 1996 medical record listing L.W.'s address as

2 715 Trinkling Creek Drive is unavailing for similar reasons.  Again, even without the record,

3 L.W.'s testimony alone is sufficient to establish romantic cohabitation.  And all the record does is

4 corroborate her testimony that she lived at the address prior to the 1997 incident.  That the medical

5 record lists her ex-husband Reid Ridgway below "Spouse/Parent" (Dkt. No. 77-6 at 2) does not

6 dispute her testimony that she lived with Mr. Brinson at 715 Trinkling Creek Drive; L.W. explains

7 Mr. Ridgway was so identified because he was her emergency contact.  (Dkt. No. 79-1 at 52.)

8 Similarly, that a medical report dated May 5, 1995 lists a different address than 715 Trinkling

9 Creek Drive (Dkt. No. 79-1 at 98) does not dispute her testimony she lived at Trinkling Creek

10 Drive in 1996 with Mr. Brinson.  Indeed, L.W. testified: "I moved three different places, and we

11 took a trip to Wisconsin that same period.  You know, it all kind of blends in[.]"  (*Id.* at 48.)[7]

12    Finally, Mr. Brinson also argues both his interrogatory responses and L.W.'s medical

13 report have no probative value because neither document "speaks to the relationship between

14 Brinson and L.W. at all."  (Dkt. No. 79 at 13.)  But courts do not consider evidence piecemeal on

15 summary judgment; rather, "[w]here the record taken as a whole could not lead a rational trier of

16 fact to find for the non-moving party, there is no genuine issue for trial.'"  *Matsushita*, 475 U.S. at

17 587 (1986) (cleaned up).  Defendant presents the medical report as evidence L.W. resided at 715

18 Trinkling Creek Drive in 1996, (Dkt. No. 77-6), which is the same time Mr. Brinson attested in

19 sworn interrogatory responses that he resided at that address.  (Dkt. No. 77-4 at 4.)  Though these

20 two documents on their own do not establish cohabitation, they are consistent with L.W.'s

21 testimony that Mr. Brinson and L.W. cohabitated at 715 Trinkling Creek Drive in 1996.

22    So, on the summary judgment record, no reasonable trier of fact could find for Mr.

23 Brinson, because drawing all reasonable inferences in his favor, there is no genuine dispute that he

24 and L.W. romantically cohabitated prior to the 1997 offense.  Thus, they were similarly situated as

25 spouses disqualifying Mr. Brinson pursuant to section 922(g)(9) from possessing a firearm.

---

[7] The Court grants Mr. Brinson's objection to the authenticity of Docket No. 77-5 because the envelope is not postmarked or postdated.  The Court does not consider this evidence in ruling on this motion.

**B. Adverse Inference Based on Mr. Brinson's Fifth Amendment Invocation**

To the extent the above evidence, although undisputed, is insufficient on its own to establish Mr. Brinson and L.W. were similarly situated as spouses, the Court may draw an adverse inference that Mr. Brinson and L.W. were in a romantic relationship and lived together at 715 Trinkling Creek Drive in 1996 based on Mr. Brinson's invocation of his Fifth Amendment right not to testify at his deposition.

"Courts may draw adverse inferences in civil cases from a party's invocation of the Fifth Amendment right not to testify." *Planned Parenthood Fed'n Am., Inc. v. Newman*, No. 20-cv-16068, 2022 WL 13613963, *3 (9th Cir. Oct. 21, 2022) (upholding imposition of adverse inference at summary judgment) (citing *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000)). The inference, however, may only be drawn if "there is a substantial need for the information and there is not another less burdensome way of obtaining that information." *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 911 (9th Cir. 2008) (cleaned up). And the inference "may be drawn only when there is independent evidence of the fact about which the party refuses to testify." *Id.* At summary judgment a court may impose an adverse inference to rule against the party invoking the Fifth Amendment if "the district court's ruling did not turn on [that party's] silence alone." *SEC v. Colello*, 139 F.3d 674, 678 (9th Cir. 1998).

At his deposition, invoking his constitutional right to silence, Mr. Brinson refused to answer the following questions:

- "Did [L.W.] ever live at 715 Trinkling Creek Drive?"
- "Do you agree with me that [L.W.] lived with you for approximately one year at 715 Felton, California?"
- "Do you also agree with me that [L.W.'s] daughters, Cypress and Haley, lived with you at this house on 715 Trinkling Creek Drive during 1996?"
- "Mr. Brinson, do you agree that you were at one time in a relationship with [L.W.] in 1996?"
- "You agree that you and the victim here, [L.W.], previously lived together as boyfriend and girlfriend, correct?"

9

(Dkt. No. 77-3 at 4-8.)  Mr. Brinson similarly invoked the privilege when responding to interrogatory responses regarding L.W.  (Dkt. No. 77-4 at 5-6.)  Mr. Brinson now argues an adverse inference is improper because "all the evidence relied on by Defendant is either inadmissible or involves a genuine issue of material fact that would be premature to resolve at this stage."  (Dkt. No. 79 at 14.)  Not so.

As explained above, Defendant provides admissible evidence "of the fact about which [Mr. Brinson] refuses to testify."  *Richards*, 541 F.3d at 912.  Defendant proffers L.W.'s consistent testimony that she lived at 715 Trinkling Creek Drive with Mr. Brinson and that they were in a romantic relationship.  Defendant also proffers a probable cause declaration, admissible for its truth, that shows that Mr. Brinson and L.W. lived together and had a romantic relationship prior to the domestic violence incident.  And Defendant also offers evidence she used the Trinkling Creek Drive address on her medical documents which reflect she lived there at the same time Mr. Brinson attests he lived there.  So, "there [is] evidence in addition to the adverse inference to support [the Court's] ruling."  *Colello*, 139 F.3d at 678.

Given Mr. Brinson and L.W. romantically cohabitated almost three decades ago, "there is not another less burdensome way of obtaining that information."  *Richards*, 541 F.3d at 912.  It is unfair for Mr. Brinson to argue there is insufficient documentary evidence he and L.W. lived together as boyfriend and girlfriend while at the same time refusing to testify under oath whether they did.  This is especially so given Mr. Brinson's refusal to respond to questions about whether he was in a romantic relationship with L.W.—though he argues in his briefing, "there is no question (and Defendant does not dispute) that Brinson's relationship to his alleged victim is and was a 'dating relationship.'"  (Dkt. No. 79 at 9; *see also* Dkt. No. 77-3 at 6 (invoking the Fifth Amendment when asked "Do you agree that you were at one time in a romantic relationship with [L.W.]").)

In light of independent corroborating evidence, the Court draws an adverse inference from Mr. Brinson's silence that L.W. and Mr. Brinson were in a romantic relationship while they cohabitated at 715 Trinkling Creek Drive, in Felton, California in 1996.  Even so, this inference is not necessary to hold Defendant has met her summary judgment burden.

10

### C.  The 2022 Amendment to 18 U.S.C. § 921(a)(33)(A) is Irrelevant

Mr. Brinson's reliance on the 2022 amendment to 18 U.S.C. § 921(a)(33)(A) adding "dating relationship" to the definition of a domestic violence offense is misplaced.  First, the amendment expressly states it is not retroactive.  Pub. L. No. 117-159, § 12005(b), 136 Stat. 1313, 1332 (2022) (stating the amendment "shall not apply to any conviction of a misdemeanor crime of domestic violence entered before the date of enactment of this Act.").  Indeed, Mr. Brinson himself concedes the new definition "is not retroactive."  (Dkt. No. 79 at 8.)  Second, the amendment does not eliminate the "similarly situated to a spouse" definition of a domestic violence offense.  So, on this record, Mr. Brinson's 1997 offense is a disqualifying crime of domestic violence under the amended statute.  Mr. Brinson's insistence the facts show he was in a dating relationship with L.W. does not mean the facts could not also show he was similarly situated to a spouse of L.W.  Third, to the extent his argument depends on the facts not establishing he was similarly situated to a spouse of L.W., the Court disagrees as explained *supra*.

\*       \*       \*

"The relevant questions under § 925A are whether the information preventing Plaintiff's firearm transfer is erroneous or whether he is not disqualified from receipt of a firearm—not whether the government's decision was adequately justified at the time pursuant to the Federal Rules of Evidence."  (Dkt. No. 63 at 10-11.)  Here, undisputed evidence demonstrates (1) Mr. Brinson and L.W. romantically cohabitated for some period of time prior to the 1997 incident, so L.W. was "a person similarly situated to a spouse;" and (2) in 1997 Mr. Brinson was convicted of violating California Penal Code § 243(e) for battery against L.W., which is "a misdemeanor" that "has, as an element, the use or attempted use of physical force or the threatened use of a deadly weapon."  18 U.S.C.§ 921(a)(33)(a)(i-ii).  Accordingly, there is no genuine dispute of material fact that Mr. Brinson had "been convicted in [a] court of a misdemeanor crime of domestic violence" and is therefore ineligible to purchase a firearm.  18 U.S.C.§ 922(g)(9).  Mr. Brinson's remaining claims therefore fail as a matter of law.

//

//

**CONCLUSION**

For the reasons stated above, Defendant's motion is GRANTED. A separate judgment will issue.

This Order disposes of Docket No. 77.

**IT IS SO ORDERED.**

Dated: May 1, 2025

JACQUELINE SCOTT CORLEY
United States District Judge